Donald MORTER, Appellant,

v.

The STATE of Texas, Appellee.

No. 52712.

Court of Criminal Appeals of Texas.

May 25, 1977.

Rehearing Denied June 22, 1977.

Jim Martin, Emmett Colvin—on appeal only—Dallas, for appellant.

James O. Mullin, County Atty. and Fred M. Barker, Asst. County Atty., Weatherford, Jim D. Vollers, State's Atty. and David S. McAngus, Asst. State's Atty., Austin, for the State.

## OPINION

ROBERTS, Judge.

This is an appeal from a conviction for injury to a child. The court assessed punishment at three years' confinement in the Texas Department of Corrections.

The record reflects that on May 3, 1975, the appellant went to the trailer house where he lived with a woman and her three children. As he approached the door, one of the children, Mark, was in the kitchen alone cooking or toasting some bread. Mark was six years old. Appellant knocked on the door and, when he finally entered, the kitchen was full of smoke and Mark had thrown the bread out the back door. In order to punish Mark for cooking in the kitchen alone, appellant picked up the hot skillet that Mark was using and applied it to the child's stomach, causing a severe burn. Photographs of this injury were admitted into evidence and are in the record.

Appellant's version of the incident is contained in his voluntary statement which was admitted into evidence:

"On May 3, 1975, I was working in the clubhouse at Horseshoe Bend. About 4 p. m. on that date I went to the trailer house to change clothes. The door was locked. I knocked on the door and Mark let me in. I did call the babysitter, but no response. As I went through the kitchen I picked up the skillet. I threatened Mark with it as if I was going to burn him. Mark backed up to the cabinet and then leaned forward. This is when I burned him. I was attempting to catch him."

Appellant further testified that, while he threatened Mark with the pan he didn't have any intention of burning him, and that the injury occurred as the result of an accident when Mark fell forward as appellant was approaching him with the hot skillet.

Mark testified that appellant ". . . sticked the skillet to my stomach with the handle . . . because he don't want me cooking bread."

Two lay witnesses testified that the burn was bad and one thought it needed medical attention.

The only expert testimony on the seriousness of Mark's injury came from Dr. John Merrick, the physician who treated him. He testified, in pertinent part, as follows:

### DIRECT EXAMINATION

\*    \*    \*    \*    \*    \*

"A  He has permanent scarring.

"Q  Is the word, disfigurement, a medical term that you use, or are you acquainted with that word?

"A  I am acquainted with it, but I don't believe it's confined to medicine.

"Q  Would you describe whether he has any disfigurement or not?

"A  Yes. I think it's a disfigurement in that it's a change from the normal. It's a disfigurement because he has scarring.

"Q  In either medical or other terms, is this a serious thing that he has; a serious injury that he has?

"[DEFENSE COUNSEL]: I'm going to object to the terminology. I object to him leading this doctor.

"THE COURT: Sustained.

"Q  In some terms, could you describe whether this is small, medium, or large, frivolous, serious, or otherwise?

"A  I think that the burn that he sustained has produced a permanent scar and I believe the scar is going to stay with him, but I don't believe that it's going to produce a serious problem to him throughout his life, except for its appearance.

"Q  Can you describe, in terms of the scar itself— Can you give some label to describe that, as to whether or not it's within some category?

"A  Well, I think that the scarring is not a heaped up scar that's not devoting adequate circulation. I think it's

mainly a change from the normal in its appearance and it should not produce permanent problems from the standpoint of future changes.

"Q Is it what you might call a frivolous matter or how would you describe it?

"A I can't describe it other than by the fact it was scarred.

"Q Is there a medical term that you would use to label it? Perhaps there is not.

"A I don't know of any other than the fact of what I have stated.

\* \* \* \* \* \*

CROSS-EXAMINATION

\* \* \* \* \* \*

"Q In other words, it's not necessarily good to look at, but it's not going to hurt this boy in any bodily function that he might have, is that right?

"A Except that it might be more susceptible to burning from the sun or something of that nature.

"Q Later on in life if he got sunburned or something like that.

"A That's right.

\* \* \* \* \* \*

"Q Now, let me ask you about serious bodily injury. Let me ask you if serious bodily injury means, bodily injury that creates a substantial risk of death or that causes death, or serious permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ. If that is what serious bodily injury means, would you feel that this boy comes within that terminology?

"A You say, if that's what it means.

"Q Uh-huh. I'm assuming that's what it means.

"A Then, I would have to say no."

V.T.C.A., Penal Code, Sec. 22.04, entitled "Injury to a Child," provides that:

"(a) A person commits an offense if he intentionally, knowingly, recklessly, or with criminal negligence engages in conduct that causes serious bodily injury, serious physical or mental deficiency or impairment, or deformity to a child who is 14 years of age or younger.

"(b) An offense under this section is a felony of the second degree."

Omitting the formal parts, appellant was indicted as follows:

". . . did then and there knowingly and intentionally engage in conduct that caused serious bodily injury to Mark Russell, a child less than 15 years of age;"

V.T.C.A., Penal Code, Sec. 1.07(34), states that:

" 'Serious bodily injury' means bodily injury that creates a substantial risk of death or that causes death, serious permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ."

The trial court gave this definition of serious bodily injury in its charge. It also charged the jury as follows:

"NOW, THEREFORE, if you believe from the evidence beyond a reasonable doubt, that the Defendant, Donald Morter, on or about the 3rd day of May, 1975, in the County of Parker, and State of Texas, as alleged in the Indictment, did then and there intentionally or knowingly engage in conduct that caused serious bodily injury, serious physical deficiency or impairment, or deformity to Mark Russell, a child younger than 15 years of age by then and there applying a hot skillet to his body, you will find the Defendant guilty of the offense of injury to a child, and so say by your verdict, but if you do not so believe, or if you have a reasonable doubt thereof, you will acquit the Defendant of the offense of injury to a child and proceed to consider whether the Defendant is guilty of the lesser included offense of assault."

This record presents fundamental error of which we must take cognizance and review in the interest of justice under the provisions of Article 40.09, Section 13, V.A. C.C.P. *See, Harris v. State,* 522 S.W.2d 199 (Tex.Cr.App.1975).

While the indictment alleged that the appellant caused "serious bodily injury" to the complaining witness, the court, in applying the law to the facts, allowed the jury to convict if they found the appellant committed other conduct proscribed by Section 22.04, *supra*. That is, causing "serious physical deficiency or impairment" or "deformity." Although these terms are not defined in Section 1.07, *supra*, we cannot presume from this absence of definition the redundancy of the statute. *Contra*, Practice Commentary to Section 22.04, *supra*.

"Every word of a statute is presumed to have been used for a purpose, and a cardinal rule of statutory construction requires that each sentence, clause, phrase and word be given effect if reasonably possible. (Citation). This rule is not altered by the fact that the Legislature has not defined a particular word or phrase, and in the absence of such a definition the words of the enactment will usually be given their ordinary meaning." *Eddins-Walcher Butane Company v. Calvert*, 156 Tex. 587, 591, 298 S.W.2d 93, 96 (1957).

"[E]very word (of legislative acts) is presumed to have been intentionally used for the purpose of making clear the legislative intent." *Gulf, C.S.F. Ry. Co. v. Blum Independent School Dist.*, 143 S.W. 353, 356 (Tex.Civ.App.—Austin 1911, On Second Motion for Rehearing, writ ref'd.). The presumption is that, in enacting a statute, the legislature intends the entire statute to be effective. *Lovell v. State*, 525 S.W.2d 511, 515 (Tex.Cr.App.1975); *accord, Perkins v. State*, 367 S.W.2d 140, 146 (Tex.Sup.1963).

We can only conclude that in enacting Section 22.04, *supra*, the Legislature proscribed three types of conduct just as they made applicable four culpable mental states.

We now turn to the fundamental error which we recognize.

"It is fundamental that a conviction for an offense cannot stand unless the charge authorized the jury to find a defendant guilty only for conduct constituting that offense (citation); *the indictment alleged such conduct* (citations); and the evidence at trial showed such conduct (citations)." (Emphasis added). *Dowden v. State*, 537 S.W.2d 5, 6 (Tex.Cr.App.1976).

In *Moore v. State*, 84 Tex.Cr.R. 256, 206 S.W. 683 (1918), this Court recognized fundamental error and held that:

"Wherever the indictment charges an offense, the facts and the charge of the court must conform to the charges contained in the indictment, and it is fundamentally wrong to authorize a conviction on any state of facts other than those which support the finding of the truth of the indictment." *Id.*, at 684.

In *Garza v. State*, 162 Tex.Cr.R. 655, 288 S.W.2d 785 (1956), this Court held that fundamental error was present when the jury was authorized to convict the defendant upon findings which did not constitute the offense as charged.

In *Gooden v. State*, 140 Tex.Cr.R. 347, 145 S.W.2d 177 (1940), this Court found fundamental error and held:

"The rule is universal and has been emphasized frequently by appellate courts, and in a great number of cases by the appellate courts of this state, that the charge must be limited to the allegations in the indictment. A jury would not be authorized to convict appellant of any other offense than that specifically charged, and the court should confine the consideration of the jury in the charge to the allegation contained in the indictment." *Id.*, at 178, *quoting, Emerson v. State*, 54 Tex.Cr.R. 628, 114 S.W. 834, 835 (1908).

Returning to *Dowden, supra*, we note that the defendant there complained that the court's charge quoted the entirety of the statute, including portions thereof that were not pled. We stated that:

"This practice at best is useless and at worst may confuse and mislead the jury and, therefore, prejudice a defendant. This Court in the past has had occasion to caution against the enumeration in the charge of portions of a statute that could not be relied upon for a conviction. (Ci-

tations). We reiterate that admonition."
*Dowden, supra,* at 7.

The judgment of the trial court is reversed and the cause is remanded.

DOUGLAS, J., dissents to that part of the opinion holding fundamental error in the court's charge.