**David Travis CLELAND, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 54100.**

Court of Criminal Appeals of Texas,
Panel No. 3.

April 12, 1978.

Dissenting Opinion On State's Motion For
Rehearing Denied Jan. 24, 1979.

Antonia M. L. Ingversen, Houston, for appellant.

Carol S. Vance, Dist. Atty., Alvin M. Titus and Timothy P. Alecander, Asst. Dist. Attys., Houston, for the State.

Before ROBERTS, PHILLIPS and VOLLERS, JJ.

## OPINION

ROBERTS, Judge.

This is an appeal from a conviction for robbery. After a trial by jury, the trial judge assessed the appellant's punishment at fifteen years' confinement in the Texas Department of Corrections.

The record reflects that the appellant sprayed mace in the eyes of the manager of a service station in Houston and took money from the cash register in the station. The appellant was apprehended fleeing from the scene of the crime.

At the outset, we are confronted with fundamental error in the charge which dictates that we reverse the judgment.

V.T.C.A., Penal Code, Section 29.02(a) states:

"(a) A person commits an offense if, in the course of committing theft as defined in Chapter 31 of this code and with intent to obtain or maintain control of the property, he:

"(1) intentionally, knowingly, or recklessly causes bodily injury to another; or

"(2) intentionally or knowingly threatens or places another in fear of imminent bodily injury or death."

In the present case the indictment stated in pertinent part that on July 26, 1974, the appellant

"while in the course of committing theft of money owned by Stephanie Wolff, hereafter styled the Complainant, and with intent to obtain and maintain control of the property, intentionally and knowingly cause bodily injury to the Complainant."

It is clear that the indictment alleged that the appellant committed robbery under V.T.C.A., Penal Code, Section 29.02(a)(1), by

alleging that the appellant intentionally and knowingly caused bodily injury to the complainant.

The pertinent portion of the trial judge's charge stated:

"Now if you find from the evidence beyond a reasonable doubt that on or about the 26th day of July, A.D. 1974, in Harris County, Texas, the defendant, David Travis Cleland, did, without the effective consent of Stephanie Wolff, the owner, take and exercise control over the corporeal personal property of Stephanie Wolff, to wit, money, from the possession of Stephanie Wolff, with intent then and there to deprive Stephanie Wolff of said money, and that the said defendant, in so doing, and with intent to acquire and maintain control of said money, *intentionally, knowingly, or recklessly caused bodily injury to said owner or intentionally or knowingly threatened or placed said owner in fear of imminent bodily injury or death*, then you will find the defendant guilty of robbery as charged in the indictment.

"Unless you so find from the evidence beyond a reasonable doubt, or if you have a reasonable doubt thereof, you will acquit the defendant."

It is clear that the charge authorized a conviction for robbery under V.T.C.A., Penal Code, Section 29.02(a)(1), if the jury found, among other things, that the appellant intentionally and knowingly caused bodily injury to Stephanie Wolff. However, it is equally clear that the charge also authorized a conviction for robbery under V.T.C.A., Penal Code, Section 29.02(a)(2), if the jury found, among other things, that the appellant intentionally or knowingly threatened or placed Stephanie Wolff in fear of imminent bodily injury or death. Thus, the charge authorized the jury to convict the appellant on two theories when only one was alleged in the indictment.

In *Robinson v. State*, 553 S.W.2d 371 (Tex.Cr.App.1977), the indictment alleged that the defendant had committed robbery under V.T.C.A., Penal Code, Section 29.-02(a)(2) and further alleged that the rob-

bery was aggravated under V.T.C.A., Penal Code, Section 29.03(a)(2). However, the charge in *Robinson* authorized the jury to convict the defendant under every conceivable theory under V.T.C.A., Penal Code, Sections 29.02(a) and 29.03(a). We there stated:

"While the charge authorized a conviction upon the theory alleged in the indictment, it also authorized a conviction upon every other conceivable theory under Sec. 29.02 and Sec. 29.03 which was not alleged in the indictment. We conclude that fundamental error is reflected and the conviction . . . must be reversed." *Id.* at 375.

See also *Davis v. State*, 557 S.W.2d 303 (Tex.Cr.App. 1977); *Dowden v. State*, 537 S.W.2d 5 (Tex.Cr.App. 1976).

In the present case, the charge authorized the jury to convict the appellant on a theory not alleged in the indictment. This was fundamental error.

The judgment is reversed and the cause remanded.

VOLLERS, J., dissents.

Before the court en banc.

DOUGLAS, Judge, dissenting on State's motion for rehearing.

On original submission, without an objection to the charge presented to the court and without a brief filed in the trial court calling the court's attention to any error in the court's charge, the Court reversed this cause on fundamental error.

The error was not reversible in 1976. Such an error in the charge was held not to be reversible error by all members of the Court in *Williams v. State*, 535 S.W.2d 352 (Tex.Cr.App.1976). Williams was charged with robbery by intentionally and knowingly threatening and placing another in fear of imminent bodily injury and death. The court charged the jury to convict if it found that Williams threatened or caused bodily injury just as the charge in the present case did. This Court recognized that a theory not charged in the indictment was sub-

mitted to the jury and that it was erroneous in that respect. The Court held: "In the circumstances presented by the facts of this case we hold the giving of the erroneous charge was not reversible error. Article 36.19, V.A.C.C.P."

Article 36.19, V.A.C.C.P., should be applied in the present case because the same principle applies in both cases. It provides, in part, that where

". . . any requirement of Articles 36.14, 36.15, 36.16, 36.17 and 36.18 has been disregarded, the judgment shall not be reversed unless the error appearing from the record was calculated to injure the rights of defendant, or unless it appears from the record that the defendant has not had a fair and impartial trial. . . ."

The indictment alleged that appellant knowingly committed bodily injury during the course of a robbery. The charge submitted to the jury authorized conviction if the jury found that appellant intentionally, knowingly or recklessly caused bodily injury or intentionally or knowingly threatened or placed said owner in fear of imminent bodily injury or death.

All the evidence is direct that he caused bodily injury intentionally and knowingly. There is no evidence that he threatened her with bodily injury or death. He just caused bodily injury.

Let us look to the record to see if this was such an error that was calculated to injure the rights of the appellant or prevented him from having a fair and impartial trial.

On the day in question, appellant stood by the Conoco Service Station at the 6600 block of South Main in Houston near a taxicab stand for about and hour and forty minutes. He told the operator of the station, Stephanie Wolff, that he had been there that long. He had a bandage around his head and as she was working he walked behind her and said, "Look here," and sprayed mace in her eyes. He then grabbed the cash drawer and she knocked the money out of his hand. He headed toward the Tides Hotel. As she followed, the mace blinded her and she fell down. She testi-fied that the mace impaired her vision, that her eyes puffed up and that she could see momentarily after the mace hit her eyes but they completely closed and she lost her sight temporarily. She stated that they smarted an awful lot, that some people came by and flushed her eyes out with a water hose. In the meantime she was hollering, "robbery, robbery," and the two men nearby caught the appellant and brought him back to the service station.

Raymond L. Foster, a seventeen-year-old senior of Kashmere High School working as a porter at the Tides II Motor Inn on South Main in Houston, heard Stephanie Wolff calling for help and he, along with another, started chasing appellant. They caught him, and as they raised up his shirt, the bandage that he had had on his head had fallen out. They found a gun on his person. The mace was wrapped up in the bandage that fell out when his shirt was raised. He identified appellant as the one he caught.

An officer who came and took appellant into custody testified that he took the items, the mace, bandage and the gun which turned out to be a replica of a .357 Magnum gun and that it was not a toy but had moving parts and looked like that type of gun.

The jury found appellant guilty and the judge assessed punishment at fifteen years. The court had before it at the punishment hearing a record of probation that he had granted appellant and the record shows that he had been convicted for other offenses and had a list of other places that he apparently intended to rob. Appellant testified that he had been convicted for a felony in Virginia in 1953, had been convicted in New Jersey for a separate felony in 1947 and had been placed on probation. He had in his possession a notebook which listed a group of service stations, and he explained, "Those things that are written there I was trying to make up my mind where to get enough money to pay the rent. I made those as my choices." He stated that he was going to pick one of these places to rob.

With this record, it cannot be said that the judge assessed a punishment that was too severe.

Could the jury have been misled when the court instructed that they should convict appellant if they found that appellant "intentionally, knowingly or recklessly cause bodily injury to said owner, or intentionally, or knowingly threaten or place said owner in fear of imminent bodily injury or death"?

Judge Dally wrote the *Williams* case for the Court and stated that it was highly unlikely that the jury was misled because there was no evidence that the complainant in that case received any bodily injury (the theory not alleged in the indictment). We should not change the rules at this stage.

During the past two years, a majority of this Court has become quite benevolent. With the trend being established by the "fundamental error" rule, there should be no need for defense counsel because a majority will search the record to see if it would have tried the case, with the benefit of its hindsight, as the trial court and defense counsel tried it. A cursory inspection shows that there has been more fundamental error according to a majority of this Court during the last three years than during the rest of the time there has been a Texas, including the time that it was a Republic.

During the history of Texas, our Courts have been known by many names. Now we have a "fundamental error" court.

From the holdings of the majority, a case will be reversed if there is some error even though such an error is beneficial to a defendant. See *Brewer v. State,* 572 S.W.2d 940 (1978), and the dissenting opinion on the denial of leave to file the State's motion for rehearing). This decision is contrary to Article 36.19, V.A.C.C.P., which provides that a case should not be reversed for an error in the court's charge unless such "error appearing from the record *was calculated to injure the rights of a defendant,* or unless it appear[ing] from the record that the defendant has not had a fair and impartial trial." (Emphasis added).

The hundreds of cases reversed for fundamental error during the last two years by a majority of the Court would apparently mean that there has been a change in this Court or that the trial courts are less able to try cases than they have ever been in the history of Texas. In the past, objections have been required and a ruling of the court obtained before cases have been reversed. Heretofore, the trial judge has been put on notice that counsel is contending that there has been some error. When this is done, a trial judge has a chance to correct the error whether it be beneficial to a defendant or whether it be some error in form.

Ordinarily, errors in a charge to a jury cause a defendant less harm than errors in admitting evidence. This Court holds that, if a defendant fails to object in the trial court to an alleged illegally taken confession in violation of the Fifth Amendment to the Constitution of the United States, the error is waived. *Taylor v. State,* 489 S.W.2d 890 (Tex.Cr.App.1973); *Crawford v. State,* 480 S.W.2d 724 (Tex.Cr.App.1972). See *Ex parte Bagley,* 509 S.W.2d 332 (Tex. Cr.App.1974), and *Moore v. State,* 480 S.W.2d 728 (Tex.Cr.App.1972). *See also Gibson v. State,* 516 S.W.2d 406 (Tex.Cr. App.1974).

If a defendant fails to object to evidence obtained as a result of an illegal search in violation of the Fourth Amendment to the Constitution of the United States, this Court holds that such error is waived. *Hernandez v. State,* 538 S.W.2d 127 (Tex.Cr. App.1976); *Milligan v. State,* 465 S.W.2d 157 (Tex.Cr.App.1971).

Other violations of constitutional rights may be waived unless there is an objection in the trial court, such as one being tried in jail clothes. *Estelle v. Williams,* 425 U.S. 501, 96 S.Ct. 1691, 48 L.Ed.2d 126 (1976), and *Williams v. State,* 477 S.W.2d 24 (Tex. Cr.App.1972). *See also Boulware v. State,* 542 S.W.2d 677 (Tex.Cr.App.1976), and *Mendoza v. State,* 552 S.W.2d 444 (Tex.Cr.App. 1977), where this Court wrote: "This Court has consistently held that in order to com-

plain of denial of a federally guaranteed constitutional rights, there must be an objection in the trial court. . . ." If all the above rights and others which can be harmful to a defendant, if violated, can be waived absent an objection, why cannot an error in form regarding charges be waived?

Fundamental error is increasing by a majority of this Court by geometric progression. See *Reynolds v. State,* 547 S.W.2d 590 (Tex.Cr.App.1976), which was reversed and the prosecution ordered dismissed on "fundamental error." The indictment alleged that Reynolds stole the property from the complaining witness, but did not allege that it was taken without his effective consent. Hundreds of cases based upon *Reynolds* have been reversed and the prosecutions ordered dismissed. *See also Ex parte Cannon,* 546 S.W.2d 266 (Tex.Cr.App.1976). *See Bouie v. State,*528 S.W.2d 587 (Tex.Cr. App.1975).

We should follow the statutes: Articles 36.14 and 36.19, V.A.C.C.P., require that an objection to the court's charge be made at the time of the trial before the matter will be reviewed. Article 36.19, V.A.C.C.P., requires that there must be an error calculated to injure the rights of a defendant before there is a reversal. The majority holds exactly opposite from the provisions of these articles. Good judges from 1913 until now have followed Article 36.19 and its predecessors.

In *Echols v. State,* 75 Tex.Cr.R. 369, 170 S.W. 786 (1914), the construction of the statute is correct. The Court wrote:

"It is just such cases as this that caused the Legislature to amend old article 723, now 743, of the Code of Criminal Procedure, and provide that the errors in the charge should not be cause for reversal, unless objected to when presented to counsel for their inspection. Errors of the character now complained of in the charge were under the old law raised in the motion for a new trial, and this court, because of such matters, felt impelled to reverse the case. The Legislature desired to correct what it considered an evil, and said this court should not reverse under

such circumstances, and should not consider such grounds on appeal when the trial court's attention was not called to such matters before the charge was read to the jury. . . ."

In *Wright v. State,* 73 Tex.Cr.R. 178, 163 S.W. 976 (1914), the Court held that the statute required an exception to the charge at the time of the trial and wrote:

". . . So it is clear that the intent and purpose of the Legislature is that we should not reverse a case because of error in the charge, if error there be, unless it was excepted to at the time of the trial, *and not then unless the error appearing from the record was calculated to injure the rights of the defendant, or unless it appears from the record that the defendant has not had a fair and impartial trial.* . . ." (Emphasis added).

Other cases have followed this construction of the statute until a majority without overruling those cases has found many errors in the court's charge to be fundamental without considering its harmful effect, if any. When a dear friend or a well established rule for so many years has departed, the proper respect should be paid. A researcher looking to the citator to see if a case has been followed or overruled should be able to determine it without reading every case written by this Court on a subject prior to their publication. If the cases from 1913 to the present were well reasoned then, there should be at least some attempted reasons given for not following them. This writer hates to see the departure of the departed without proper services.

It is hard to understand how all of those able judges in the past could have misconstrued Article 36.19 for all those years.

This Court as now constituted should realize that there are practically no cases that are antiseptically clean, and that error should be harmful before a case is reversed.

In the present case it should be assumed that the jurors who found appellant guilty were not stupid (just like the earlier judges were not stupid). The jurors heard the

evidence and knew that there was no evidence of a threat, but only evidence that the complaining witness was injured by the mace sprayed in her eyes. They could not have been misled by the court's charge.

No reversible error has been shown. The motion for rehearing should be granted and the cause should be affirmed.

W. C. DAVIS, J., joins in this dissent.