Larry **PLUNKETT**, Appellant,

v.

The **STATE** of Texas, Appellee.

No. 55078.

Court of Criminal Appeals of Texas.

Nov. 15, 1978.

On Rehearing May 16, 1979.

**816**

Ronald W. Aultman and Jerry J. Loftin, Fort Worth, for appellant.

Robert J. Glasgow, Dist. Atty. and William L. Martin, Jr., Asst. Dist. Atty., Stephenville, Robert Huttash, State's Atty., Austin, for the State.

Before ODOM, PHILLIPS and DALLY, JJ.

## OPINION

ODOM, Judge.

This is an appeal from a conviction for murder in which the jury assessed punishment at fifty years.

It is only necessary to discuss one of appellant's grounds of error. In his third ground of error appellant contends the court erroneously charged the jury on the offense alleged.

The indictment in relevant part alleges that appellant did:

". . . intentionally and knowingly cause the death of an individual, April Dawn Peters, by striking her with his hands. . . ."

V.T.C.A., Penal Code Sec. 19.02, which defines the offense of murder, in relevant part provides:

"(a) A person commits an offense if he:

(1) intentionally or knowingly causes the death of an individual; [or]

(2) intends to cause serious bodily injury and commits an act clearly dangerous to human life that causes the death of an individual; . . ."

Appellant was clearly charged under Sec. 19.02(a)(1), yet the trial court, in submitting the case to the jury, allowed them to find appellant guilty under either Sec. 19.02(a)(1) or Sec. 19.02(a)(2). Although the court first correctly applied the law to the facts of the case under the theory alleged in the indictment, it then immediately thereafter included this paragraph in its instructions to the jury:

"You are instructed that to be guilty of murder, a defendant must have acted intentionally or knowingly in causing the death of the deceased. He must have intentionally or knowingly caused the death, *or he must have intended to cause serious bodily injury and have committed an act clearly dangerous to human life that caused the death of the deceased.* Unless defendant so acted intentionally or knowingly *or with intent to cause serious bodily injury to the deceased,* he cannot be convicted of murder.

"Therefore, if you find from the evidence beyond a reasonable doubt that the defendant, Larry Plunkett, did cause the death of April Dawn Peters by striking her with his hands, but you have a reasonable doubt that the defendant did intentionally or knowingly cause death *or that he intended to cause April Dawn Peters serious bodily injury,* then you will acquit the defendant of murder, and will consider whether or not he is guilty of involuntary manslaughter."

We find the jury charge on a theory not alleged in the indictment was fundamental error requiring a new trial, and sustain appellant's third ground of error. In *Morter v. State*, Tex.Cr.App., 551 S.W.2d 715, the defendant was convicted of injury to a child on an indictment that alleged he had caused serious bodily injury. On appeal the conviction was reversed because the jury instructions authorized conviction if the evidence showed the defendant had caused serious physical deficiency or impairment, or deformity, which were means not alleged in the indictment. Robbery convictions were reversed for fundamentally defective jury charges authorizing convictions on theories not alleged in the indictments in *Robinson v. State,* Tex.Cr.App., 553 S.W.2d 371; *Davis v. State,* Tex.Cr.App., 557 S.W.2d 303; *Jones v. State,* Tex.Cr.App., 566 S.W.2d 939, and *Edmond v. State,* Tex.Cr.App., 566 S.W.2d 609. In *Gooden v. State,* 140 Tex. Cr.R. 347, 145 S.W.2d 177, a conviction for burglary with intent to commit theft was reversed for fundamental error in the jury charge because it authorized a conviction for burglary with intent to commit a felony or theft even though no intent to commit a felony had been alleged in the indictment.

In this case the indictment alleged murder by intentionally or knowingly causing the deceased's death, but the jury charge expanded on those allegations and authorized a conviction if appellant intended to cause serious bodily injury and committed an act clearly dangerous to human life that caused the deceased's death. This was fundamental error [1] and the conviction must be set aside.

The judgment is reversed and the cause remanded.

Before the court en banc.

## OPINION ON COURT'S OWN MOTION FOR REHEARING

TOM G. DAVIS, Judge.

Appeal is taken from a conviction for murder. V.T.C.A. Penal Code, Sec. 19.02. Punishment was assessed by the jury at fifty years.

Appellant initially challenges the sufficiency of the evidence to support the conviction.

The record reflects that April Dawn Peters, age two, died on January 7, 1975, at her home in Mineral Wells. Appellant lived with the child's mother at the time of the death of the deceased.

Dr. Charles Petty, Chief Medical Examiner for Dallas County, testified as to the cause of death of the child. His testimony was based on the results of an autopsy performed by Dr. Ross Zumwalt on January 8, 1975.

Dr. Petty testified that there were thirty to forty bruises on the body of the deceased. These bruises were from three-eighths of an inch to an inch at their greatest dimension.

---

1. In this case the error was compounded by the prosecutor's jury argument at the guilt stage of the trial which emphasized this theory for conviction. In opening his argument the prosecutor said:

    "The first paragraph of the charge in this case defines murder. And there is primarily two definitions of murder, a person commits murder if he intentionally and knowingly causes the death of an individual. That means I can plot, plan, lay and wait and shoot somebody, knowingly and intentionally shoot them, that's murder, or intends to cause serious bodily injury and commits an act clearly dangerous to human life that caused the death of an individual. That's the definition that applies to this case, doing an act clearly dangerous to health [sic] that results in death, and it's just most assuredly murder."

    Later, in concluding his jury argument at the guilt stage, the prosecutor again urged this theory of conviction:

    "When Larry Plunkett was inflicting the injuries on this photograph to April Dawn Peters, when he was beating that girl, when he caused the skull fracture to her head, did he do something that caused her death? Did he do something that caused her death? That's murder, paragraph one, cause serious bodily injury and commit an act clearly dangerous to human life is murder just bigger than a goose. If it looks like a duck and walks like a duck and quacks like a duck, well, it's just a duck. Thank you, ladies and gentlemen."

    (The "paragraph one" referred to by the prosecutor is the abstract statement of the law of murder and tracks Sec. 19.02(a)(1) and (2)).

The bruises were found on the left forehead, both sides of the face, the chest, the abdomen, the back, the front surfaces of both thighs and lower legs, and the inner surface of one thigh. The bruises found on the buttocks were larger than the others and flowed together. Dr. Petty identified State's Exhibit No. 1 as a picture of the deceased depicting the bruises to her face and chest.

The inner surface of the scalp covering the left side of the back of the head was also bruised, and under it was a corresponding fracture of the skull. The fracture was described as "Y" shaped and three inches long at its greatest length. The depth of the fracture was the entire thickness of the skull. The witness observed that the edges of the fracture were not bent inward or depressed, indicating contact with a broad flat object rather than a narrow, more pointed object. The brain was described as swollen.

The autopsy revealed other internal injuries to the trunk of the body. The heart had a tear on its back portion. The sac surrounding the heart contained a considerable amount of blood. The liver, the spleen, and the pancreas had also been torn. There were tears in the tissue that holds the intestines in place, and blood was present in both the chest and abdominal cavities. In the doctor's opinion, each of the above injuries was caused by force either directly applied or indirectly applied, such as a blow or an impact with a fixed object.

When asked whether the internal injuries could have been the result of resuscitation or heart massage attempts, the witness stated that the injuries could have resulted from such actions. In his opinion, however, they were not caused by resuscitative measures. The doctor stated that a great or heavy force would be necessary to cause the injuries to the internal organs that the autopsy revealed. He further stated that no food material or vomitus was found anywhere in the respiratory track, as would be expected if a person had been choking on such material so as to require resuscitation.

Dr. Petty testified that the injury to the head was received approximately an hour before death. He further estimated that the head injury was "somewhat older than the injuries to the abdomen, thirty minutes, perhaps forty-five." An examination of some of the bruises revealed that they were received sometime within 24 hours of death.

The witness concluded that either the injuries to the head or the injuries to the internal organs would have been sufficient to cause the death independently of each other. He stated that in his opinion the injuries to the head were not those normally received when a child falls from an ordinary bed onto a carpeted floor.

Larry Watson, a Mineral Wells police officer, testified in regard to his investigation of the incident. Watson identified State's Exhibits Nos. 2–7 as pictures of the deceased taken at the hospital. These pictures depict the bruises covering the deceased's body as described above.

Gerald Seaman, an ambulance attendant, testified that he attempted to resuscitate the deceased. He found the airway was not blocked and that he was able to get air into the child's lungs. He also attempted to resuscitate the child's heart by external means, but was unsuccessful. Seaman also stated that he applied a suction apparatus to the airways of the victim and that a fluid containing food particles was removed by this method.

Gayle Peters, the mother of the deceased, testified that she left the child in the appellant's care about 6:00 p. m. on the day of the child's death. According to her testimony, earlier that day she had bathed the girl and noticed bruises on her buttocks and stomach only. Peters stated that the bruises on the buttocks were from a spanking administered by the appellant on the previous day. She further stated that when she left the house at 6:00 p. m. the child had no other bruises and seemed to be acting normally. Peters viewed State's Exhibit No. 1 and stated that the bruises depicted in that photo were not present when she last saw the child alive.

Cross-examination revealed that Peters had previously made a statement to police that conflicted with her testimony at trial. In that statement she recounted other injuries sustained by the child in the two weeks before her death. The extent and cause of these injuries mentioned in her statement were testified to in detail by defense witnesses and are set forth in this opinion. Letters written to the appellant by the witness were also somewhat inconsistent with her testimony at trial.

Sherrill Rogers testified that she accompanied Gayle Peters on the day of the child's death. She stated that at 6:00 p. m. when she and Peters left the house the child seemed normal. She related that when she returned to the appellant's home with Peters one hour later the ambulance had arrived and was about to transport the child to the hospital.

Appellant's defense was based on showing that the bruises and head injuries were accidental and that the internal injuries were unintentionally inflicted during attempts to revive her.

Randy Fouts testified that the child was easy to bruise and very clumsy. He further testified that the bruises on her forehead were caused by a falling lamp around December 17, 1974. He stated that some four days after that incident the child tripped and injured the same part of her head. He concluded that the bruises covering her body were the result of bumping into things and accidentally hurting herself.

Appellant's mother testified that the child was awkward and easy to bruise, and that she had observed the child fall and hit her head on a coffee table in late November. She further stated that other bruises were from the child's mishaps while riding her tricycle.

Robin Fouts testified regarding the lamp incident and the resulting injury to the child.

Appellant's father testified that he had observed the child fall against the coffee table. He stated that the child was somewhat awkward and that he had observed bruises on the child's legs and on her head around Christmas, 1974.

Sherrill Rogers' husband, Arthur, testified that he had observed bruises on the child on previous occasions. He stated that three days previous to the child's death he had seen her fall backwards from a couch onto a concrete floor covered only by a thin carpet with no padding underneath it.

Appellant testified that he had never injured the child intentionally. According to his testimony, he was in the living room of his home when he heard a loud thump and choking sounds. He ran to the bedroom to find the child lying with her feet on the bed and her head on the floor. He stated that he attempted to resuscitate the child, and in his excitement may have used too much force on her chest and stomach. According to his testimony, he pushed on the child's stomach and hit her on the chest to attempt to revive her. He took the child to a neighbor's house, and help was summoned.

He admitted to have disciplined the child on previous occasions, but claimed he never injured the child. He denied any intentional injury of the child on the night of her death.

State's rebuttal witness Ima Moreland testified as to the condition of the child on the days between Christmas and the first of January. Mrs. Moreland is the mother of the deceased's natural father.

Moreland testified that the child was in her custody from December 18th to the 22nd, on December 26th, and again on December 29th and 30th. She stated that she had taken the child to the doctor during the first of the periods set out above for treatment of burns to her hands. She related that during this Christmas period she bathed, dressed, and cared for the child, and observed no bruises.

Moreland identified State's Exhibits 8 through 13 as photographs taken on Christmas morning depicting the child while at Moreland's home. She also identified State's Exhibits Nos. 14 and 15 as pictures of the child taken on December 29th. These pictures reveal no bruises on the child's forehead.

Moreland did state that on December 29th she noticed a bruise on her shin, a small bruise close to the corner of one eye, and small bruises on her chest and on one arm. Moreland was then shown State's Exhibits Nos. 1 and 2, pictures of the deceased after her death. Moreland stated that the bruises depicted in those photos were more numerous, serious, and in additional locations from the ones she had observed.

Debbie Clifton, Mrs. Moreland's daughter, testified that she observed the child on the occasions that the child was at Moreland's home. She stated that the child had no bruise on her forehead at those times.

Appellant's sister, Ima Plunkett, testified as a rebuttal witness for the defense. She testified that the pictures of the child, State's Exhibit Nos. 8–15, revealed bruises on her lip, forehead, and shoulder when viewed under a magnifying glass. She further stated that the bruises on the inside of the deceased's legs were caused by riding a rocking horse.

■■■ Appellant maintains that the evidence is insufficient to support the conviction. He specifically challenges the sufficiency of the evidence to show that he intentionally and knowingly caused the death, and to show that the death was caused by blows from his hands.

Appellant's conviction is based on circumstantial evidence. Circumstantial evidence must exclude every other reasonable hypothesis except the guilt of the accused. *Easley v. State*, Tex.Cr.App., 564 S.W.2d 742; *Stogsdill v. State*, Tex.Cr.App., 552 S.W.2d 481. Each fact need not point directly and independently to the guilt of the accused, however, as the cumulative effect of all the incriminating facts may be sufficient to support the conviction. *Easley v. State*, supra; *Stogsdill v. State*, supra; *Flores v. State*, Tex.Cr.App., 551 S.W.2d 364.

The evidence reveals that the appellant was with the child when she was fatally injured. The testimony at trial regarding the severity of the injuries reflects intentional acts rather than any accident or unintentional injury. The bruises depicted in the pictures strongly indicate blows to almost every portion of the body. The locations of the bruises in many instances militate against any conclusion that they were accidental.

Piece by piece the State's case eliminated the explanations of these injuries offered by appellant. Appellant's testimony that he heard a thud and immediately went to the child's aid is in direct conflict with the evidence that the blow to the head was inflicted approximately an hour before the child's death. The evidence that the bruises and possibly the skull fracture were caused by accidents at various times previous to the date of her death is contradicted by the pictures of the child between Christmas and January 1st and the observations of the actions of the child during that time.

We find that the cumulative force of the evidence was sufficient to exclude every reasonable hypothesis but one, the appellant's guilt.

■■ Appellant contends that the trial court erred in its charge to the jury. The basis of this contention is that the trial court charged on a theory of murder not alleged in the indictment. Appellant made no objection to this portion of the charge at trial, thus our review is limited to fundamental error.

The indictment alleged that the appellant:

"did then and there intentionally and knowingly cause the death of an individual, April Dawn Peters, by striking her with his hands; . . .."

This constitutes an offense under Sec. 19.-02(a)(1), supra.[1] The court's charge to the jury included another mode of committing

---

1. V.T.C.A. Penal Code, Sec. 19.02, as relevant to this discussion, provides:

   "(a) A person commits an offense if he:
   "(1) intentionally or knowingly causes the death of an individual;

   "(2) intends to cause serious bodily injury and commits an act clearly dangerous to human life that causes the death of an individual; . . .."

murder, however, and thus charged on a theory not alleged in the indictment.

The court's charge defined murder abstractly to include the second possible mode of committing murder contained in Sec. 19.-02(a)(2). In the following paragraphs, the charge applied the law to the facts as follows:

"3.

"Now if you find and believe from the evidence beyond a reasonable doubt that on or about the 8th day of January, 1975, in Palo Pinto County, Texas, the defendant, Larry Plunkett, did intentionally or knowingly cause the death of an individual, April Dawn Peters, by striking her with his hands, as set forth in the indictment, then you will find the defendant guilty of murder as charged in the indictment.

"Unless you so find beyond a reasonable doubt, or if you have a reasonable doubt thereof, you will acquit the defendant and find him not guilty of murder and consider whether he is guilty of the lesser offense of involuntary manslaughter.

"3A.

"You are instructed that to be guilty of murder, a defendant must have acted intentionally or knowingly in causing the death of the deceased. He must have intentionally or knowingly caused the death, *or he must have intended to cause serious bodily injury and have committed an act clearly dangerous to human life* that caused the death of deceased. *Unless* defendant so acted intentionally or knowingly or with intent to cause serious bodily injury to the deceased, *he cannot* be convicted of murder.

2. In each of the following cases the theory not alleged in the indictment was included in the affirmative application of the law to the facts. Thus, the jury's consideration was centered on a finding of guilt if it found facts to exist to support the theory not alleged in the indictment. *Smith v. State,* Tex.Cr.App., 574 S.W.2d 551; *Bridges v. State,* Tex.Cr.App., 574 S.W.2d 143; *Garcia v. State,* Tex.Cr.App., 574 S.W.2d 133; *Donald v. State,* Tex.Cr.App., 574 S.W.2d

"Therefore, if you find from the evidence beyond a reasonable doubt that the defendant, Larry Plunkett, did cause the death of April Dawn Peters by striking her with his hands, *but you have a reasonable doubt* that the defendant did intentionally or knowingly cause death or *that he intended to cause April Dawn Peters serious bodily injury,* then you *will acquit* the defendant of murder, and will consider whether or not he is guilty of involuntary manslaughter." [Emphasis added.]

This Court has held that when a jury charge includes a theory not alleged in the indictment in its application of the law to the facts, the charge is fundamentally defective. *McGee v. State,* Tex.Cr.App., 575 S.W.2d 563; *Cleland v. State,* Tex.Cr.App., 575 S.W.2d 296.[2] Such a charge is in error because it *authorizes* a conviction on a theory not alleged in the indictment, not just because surplus language has been included in the charge. *See Robinson v. State,* Tex. Cr.App., 553 S.W.2d 371, and *compare Smith v. State,* Tex.Cr.App., 541 S.W.2d 831. Thus, unless the charge in the present case *authorized* conviction under Sec. 19.-02(a)(2), the error in the court's charge is not fundamental.

In the present case, the charge defined murder abstractly, and then applied this definition to the facts in Paragraph 3A. Although a theory not alleged in the indictment is included in Paragraph 3A, it is important to note that this paragraph is a converse charge, directing acquittal and consideration of the lesser included offense, not directing a finding of guilt. Thus, Paragraph 3A did not authorize a conviction under Sec. 19.02(a)(2), and provided no affirmative guidance for the jury's finding of guilt.

119; *Fella v. State,* Tex.Cr.App., 573 S.W.2d 548; *Brewer v. State,* Tex.Cr.App., 572 S.W.2d 940; *Whitlow v. State,* Tex.Cr.App., 567 S.W.2d 522; *Jones v. State,* Tex.Cr.App., 566 S.W.2d 939; *Edmond v. State,* Tex.Cr.App., 566 S.W.2d 609; *Shaw v. State,* Tex.Cr.App., 557 S.W.2d 305; *Davis v. State,* Tex.Cr.App., 557 S.W.2d 303; *Robinson v. State,* Tex.Cr.App., 553 S.W.2d 371; *Morter v. State,* Tex.Cr.App., 551 S.W.2d 715.

Guidance for the jury is provided in Paragraph 3, which authorizes conviction if the jury finds that the appellant committed murder as defined in Sec. 19.02(a)(1), the theory charged in the indictment. Paragraph 3 directs the jury to consider the lesser included offense if it does not find that murder was committed as set out in the indictment.

Although the charge is erroneous and confusing, it does not authorize conviction on a theory not alleged in the indictment. The inclusion of the erroneous language in the charge did not enable the jury to return a guilty verdict if they found murder had been committed in any other way than that charged in the indictment. The jury was instructed to return a finding of guilt only if they found that the appellant did "intentionally or knowingly cause the death of an individual, April Dawn Peters, by striking her with his hands." We find no fundamental error in the jury charge. See *Cumbie v. State*, Tex.Cr.App., 578 S.W.2d 732.

■ Appellant contends that this error in the court's charge was compounded by the prosecutor's final arguments. He maintains that this argument regarding the erroneous charge requires reversal.

The prosecutor stated that:

"The first paragraph of the charge in this cause defines murder. And there is primarily two definitions of murder, a person commits murder if he intentionally and knowingly causes the death of an individual. That means I can plot, plan, lay and wait and shoot somebody, knowingly and intentionally shoot them, that's murder, or intends to cause serious bodily injury and commits an act clearly dangerous to human life that caused the death of an individual. That's the definition that applies to this case, doing an act clearly dangerous to health that results in death, and it's just most assuredly murder. Paragraph two, the Court sets up some definitions, intentionally, knowingly is set up there, aware of the nature of conduct, circumstances exist, bodily injury is set up for you and you can go over those definitions. Paragraph three

tracks the indictment, and if that's what you find in paragraph three, you find him guilty of murder."

No objection was made to this argument.

Unless the arguments of the prosecutor are so prejudicial that no instruction could cure the harm, the failure to timely object waives any error. *Smith v. State*, Tex.Cr. App., 541 S.W.2d 831; *Rodriquez v. State*, Tex.Cr.App., 530 S.W.2d 944.

■ Appellant next contends that the trial court erred in failing to charge the jury on the law of accident. Appellant submitted a written requested charge on the law of accident. Although this charge was not a correct charge, it was sufficient to call the trial court's attention to the omission of the charge. *Stiles v. State*, Tex.Cr.App., 520 S.W.2d 894; *Esparza v. State*, Tex.Cr.App., 520 S.W.2d 891.

A charge on accident need not be submitted unless there is some evidence that the act resulting in death was unintentional. *Fazzino v. State*, Tex.Cr.App., 531 S.W.2d 818; *Stiles v. State*, supra. The focus of our inquiry as to whether a charge on accident was required is the appellant's acts, not the results of his acts. *Fazzino v. State*, supra.

In the present case, the appellant testified that his attempts to resuscitate the child were intentional, but that the results were accidental. This evidence does not support submission of a charge on accident. Nor does evidence to the effect that the injuries to the child's head were from an accidental fall compel submission of this charge. The law of accident focuses on the appellant's acts, not causation. No error is shown in the refusal to charge on accident.

■ Appellant contends "the trial court erred in refusing to include a charge on injuries received as a result of resuscitation."

Appellant directs our attention to the following requested charges which were denied by the court:

(1) "You are instructed no acts done in attempt to resuscitate April Dawn

are criminal conduct. Any injury she may sustain during resuscitation would not be the result of a criminal act, therefore if you believe from the evidence or if you have a reasonable doubt that the deceased received injury from the defendant that resulted in her death while attempting resuscitation then the defendant would not be guilty and should be acquitted."

(2) "You are instructed that if you find that the deceased April Dawn Peters, died from injuries sustained in attempting to resuscitate her, then the defendant would not be guilty as charged in the indictment, or if you find the facts so to be, or if you have a reasonable doubt thereof you will acquit the defendant and find him not guilty."

Appellant directs our attention to evidence that the abdominal injuries sustained by the deceased could have resulted from attempted resuscitation.

The evidence reflects that injuries were not limited to the abdominal area. Injuries were also found to the head, the face, the chest, the back, the front surfaces of both thighs, lower legs, inner surface of one thigh and the buttocks. Dr. Petty testified regarding the cause of death as follows:

"The cause of death really is the multiple injuries that were received, however, the head injuries alone would cause death, and on the other side of the coin, the abdominal injuries, that is the heart, the liver, the spleen and pancreas injuries would cause death without the head injuries, either one could cause death without the other."

This Court has held that a trial court does not err in refusing to submit a charge that singles out limited parts of the evidence. *Laws v. State*, Tex.Cr.App., 549 S.W.2d 738; *Hoover v. State*, Tex.Cr.App., 390 S.W.2d 758; *Dunne v. State*, 98 Tex.Cr.R. 7, 263 S.W.2d 608. The instant case presents a classic example of the problems that arise in giving such a charge. The effect of the appellant's requested charges is to instruct the jury to acquit if it finds that the abdominal injuries were sustained as the result of appellant's efforts to resuscitate the deceased. Such an instruction excludes from the jury's consideration the fact that multiple injuries were inflicted on most of the child's body and the combined effect of all injuries could have been the cause of death. It excludes from the jury's consideration the evidence that the deceased sustained a serious injury to the head which, according to medical testimony, would have caused the death of the deceased independently of other injuries.

By giving the requested charges the court would in effect be telling the jury that the injuries to the abdominal area caused the death of the deceased to the exclusion of all other injuries. Such a charge would clearly be a comment on the weight of the evidence. *See, Hoover v. State*, supra.

No error is shown in the court's action in refusing appellant's requested charge.

■ Appellant contends that the trial court erred in allowing the prosecutor to inform the jury as to the range of punishment during his argument at the guilt-innocence phase of the trial. Appellant points to three separate portions of the prosecutor's argument in support of this contention.

Two of the three arguments complained of were not objected to on the grounds urged now. Appellant's objection to the third argument was sustained, but no instruction to disregard was requested. Appellant did not receive an adverse ruling. Nothing is preserved for our review. *Rasberry v. State*, Tex.Cr.App., 535 S.W.2d 871; *Stokes v. State*, Tex.Cr.App., 506 S.W.2d 860.

■■ Appellant next contends that the trial court erred in failing to grant his motion for mistrial based on the prosecutor's jury argument. Appellant contends that the prosecutor's argument stated a personal opinion.

The prosecutor argued:

"You know, look at the evidence. The Plunkett girl came up and testified that she's sitting out there, she said she saw every bruise, every bruise reflected in these pictures, she said she saw four or five days prior to death. Well, that is just not true."

The trial court sustained the appellant's objection and instructed the jury to disregard the statement.

Normally, when an objection to jury argument is sustained and an instruction to disregard given, any error from the remark is cured. *Rodriquez v. State*, Tex.Cr.App., 552 S.W.2d 451; *Taylor v. State*, Tex.Cr. App., 550 S.W.2d 695. The argument here was not so prejudicial that an instruction could not cure any harmful effect. No error is shown.

 Appellant contends that the trial court erred in allowing the prosecutor to argue outside the record. The argument complained of is:

"MR. GLASGOW [prosecutor]: And can't you imagine he and this girl living in the relationship, sleeping in the same bed together, interfering with their sexual activities, interfering with everything they wanted to do—

"MR. LOFTIN [defense counsel]: Your Honor, again Counsel is completely outside the record, he's completely outside the record.

"THE COURT: Overruled."

The record reflects that the child's mother and the appellant were living together as man and wife. The child's mother testified that the child slept in the same bedroom as she and the appellant did.

Counsel has wide latitude in closing argument. He may draw all inferences that are reasonable and fair so long as those inferences are supported by the evidence and offered in good faith. *Griffin v. State*, Tex.Cr.App., 554 S.W.2d 688; *Jackson v. State*, Tex.Cr.App., 536 S.W.2d 371. This argument was an inference from the evidence regarding possible motives for the appellant's alleged acts. No error is shown.

Appellant finally contends that the trial court erred in allowing the prosecutor to argue facts not in evidence. The argument complained of is:

"He said, I can't tell you in matters of minutes, maybe thirty, maybe forty-five, not more than an hour, sixty minutes. And then he testified that when that injury was inflicted to that heart she died within five minutes. And the defense to this law suit as I think you see it is the girl fell off the bed and fractured her skull. Dr. Petty, as a scientist, said that just didn't happen."

The record reflects that this argument was not outside the record. No error is shown.

The motion for rehearing is granted. The judgment is affirmed.

ROBERTS, ODOM, PHILLIPS and CLINTON, JJ., dissent for reasons stated in original opinion.