**Kenneth Wayne CAMPBELL, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. A14–87–448–CR.**

Court of Appeals of Texas, Houston (14th Dist.).

April 14, 1988.

Kim Richardson, Freeport, Gerald B. Scheve, Houston, for appellant.

Jim Turner, Angleton, for appellee.

Before J. CURTISS BROWN, C.J., and MURPHY and ROBERTSON, JJ.

OPINION

MURPHY, Justice.

This is an appeal from a conviction based upon a jury verdict for the offense of robbery. Following the appellant's plea of true to the enhancement paragraph contained in the indictment, the court assessed punishment at fifty-five years in the Texas Department of Corrections. Appellant challenges the judgment by two points of error. We affirm.

On July 14, 1986, at approximately 6:40 P.M., the appellant entered Pete's Cut Rate Liquors. Ms. Joy Quintanilla, the only employee on duty in the front of the store at the time, was breaking up boxes and waiting on a customer. Appellant had been acquainted with Quintanilla from previous employment when he had worked at the Longhorn Meadows Apartments as a maintenance man and Quintanilla as an assistant manager. After entering the store appellant engaged in light conversation with Quintanilla until the only other customer remaining in the store left. According to Quintanilla, once she and the appellant were alone, appellant pulled out what appeared to be a gun and stated "this is a stickup". Quintanilla testified that she told the appellant to put the gun away but that he responded by telling her that it wasn't a joke and that she should get him the money. As Quintanilla was walking towards the register to comply with appellant's demand, the customer who had previously been in the store returned. At that time appellant put his gun away and told Quintanilla that it was "just a joke". Although appellant continued to assure Quintanilla that he was only kidding, she told

him to leave, and after he did so she called the police.

By his first point of error appellant contends that the state committed reversible error during final jury arguments. Specifically, appellant alleges that the state: commented on the failure of the appellant to testify, expressed personal opinions as to the guilt of the appellant, and injected matters outside of the record into his closing arguments. Initially, we note that appellant only objected once during final arguments. Thus, appellant's two unobjected to challenges to the state's final arguments are waived unless we find that the arguments were so prejudicial that no instruction could cure the harm. *Green v. State*, 682 S.W.2d 271, 295 (Tex.Crim.App.1984); *Plunkett v. State*, 580 S.W.2d 815 (Tex. Crim.App.1979). We first address appellant's unobjected to assertions of harm resulting from specific statements made by the prosecutor. Here, appellant's first complaint is that the prosecutor commented on his failure to testify by stating:

> Now, how do you determine someone's intent? Well, you know, it's always been said that actions speak louder than words. And what do we have here? *We can't, I guess, open up his head and see what his intent was at the time. We can only go by the evidence before us and with the evidence we have.* (emphasis added).

■ For an argument by the state to constitute a violation of TEX.CODE CRIM.PROC.ANN. art. 38.08 (Vernon 1979), which prohibits any comment on a defendant's failure to testify, the language used must "necessarily" imply, from the standpoint of the jury, a reference to such failure by the appellant. *Griffin v. State*, 554 S.W.2d 688 (Tex.Crim.App.1977); *Ramos v. State*, 419 S.W.2d 359 (Tex.Crim. App.1967). The prosecutor's comment in this case was indirect, therefore, to constitute reversible error it must call for a denial of an assertion of fact or contradict evidence that only the appellant is in a position to offer. 554 S.W.2d at 690. Here, the appellant had put his intent in issue by maintaining as a defense that it

was all a joke when he pointed the gun at the complainant. In response to this assertion, the state was allowed to draw from the facts in evidence all inferences that were reasonable, fair, and legitimate. *Alejandro v. State*, 493 S.W.2d 230 (Tex.Crim. App.1973). Consequently, it was reasonable for the prosecutor to refer to the appellant's conduct as speaking for itself. However, it may have been improvident for him to suggest to the jury that they could not "open up" appellant's head in order to discern his intent. Yet, this is not language which must "necessarily" be interpreted as implying a comment on the appellant's failure to testify. It is entirely possible that the prosecutor would have made the same comment even if the appellant had taken the stand. We find that the jury could have just as easily concluded that the prosecutor was referring to the appellant's private thoughts at the time the incident occurred and not the appellant's failure to take the stand. By the same reasoning we do not find that the prosecutor's comment was a denial of an assertion of fact or a contradiction of evidence which only the appellant was in a position to offer. If error did exist it was not of an irreparable nature and did not constitute reversible error.

■ Appellant's second unobjected to assertion of error is the prosecutor's statement:

> If you're gonna judge the evidence, and I don't—I feel the defendant's guilty of robbery.

Here, appellant's failure to object and request an instruction was fatal. Such improper argument by the state has been held to be curable upon the trial court's instruction to disregard. *Boyd v. State*, 643 S.W.2d 700 (Tex.Crim.App.1982).

■ Finally, appellant asserts that the state committed error by making several references to matters not in the record. The only such alleged statement appellant objected to was:

> It's reasonable to assume that he didn't, when he first entered, that he didn't know she was working there. And if he did, it's common knowledge it hap-

pens all the time, that people rob other people that they know, or commit theft against them. That, in and of itself, doesn't necessarily mean that he is not guilty.

I guess that most victims of theft are people that know the perpetrator, or at least have a casual acquaintance. I mean, that's more the rule, rather than the exception.

Appellant specifically objected to the State's reference concerning what "percentage of victims know the robber." The appellant's assertion is that the state was making a causal connection not reasonably justified by the evidence between the crime being tried and the action of others. *See Moore v. State*, 530 S.W.2d 536 (Tex.Crim. App.1975). Once again, however, we find the state was addressing the unliklihood of appellant's defense that it was all a joke. The defense had argued that the fact appellant knew the victim and did not try to disguise himself indicated that the whole thing was a prank. The prosecuting attorney was duty bound to respond to this. Furthermore, even if the state's argument did constitute some error on this point, we do not find that the jury argument was so inflammatory that the prejudicial effect could not have been cured by an instruction; the appellant's failure to request an instruction to disregard after his objection was sustained waived any error in the argument. *Fuentes v. State*, 664 S.W.2d 333 (Tex.Crim.App.1984); *Clemons v. State*, 681 S.W.2d 643 (Tex.App.—Houston [14th Dist.] 1984, pet. ref'd.).

Appellant's second point attacks the sufficiency of the evidence to support the jury's verdict. For our review of the sufficiency of the evidence to support a conviction, we view the evidence in the light most favorable to the verdict, inquiring whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *Sharp v. State*, 707 S.W.2d 611, 614 (Tex.Crim.App.1986).

Presented in this light the facts show that appellant entered the liquor store where Quintanilla worked, waited until they were alone in the front of the store, pointed what appeared to be a gun at her, told her it was a stick-up and demanded money. Officer Shoemake, who apprehended the appellant testified that the BB gun appellant pointed at Quintanilla closely resembled a real handgun. We hold that a rational trier of the facts could have found the essential elements of the crime beyond a reasonable doubt. The judgment is affirmed.