Opinion issued February 7, 2008










In The
Court of Appeals
For The
First District of Texas
____________

NO. 01-06-00946-CR
____________

BARTHOLOMEW ANTONIO GUZMAN, Appellant

V.

THE STATE OF TEXAS, Appellee




On Appeal from the 262nd District Court
Harris County, Texas
Trial Court Cause No. 1053411



 
MEMORANDUM OPINION
          A jury convicted appellant, Bartholomew Antonio Guzman, of causing serious
bodily injury to a child and, having found true the enhancement paragraphs alleging
two prior convictions for burglary of a habitation, assessed his punishment at 90
years’ confinement. See Tex. Pen. Code Ann. § 22.04 (Vernon 2003 and Supp.
2007). We determine whether the evidence is factually sufficient to prove that
appellant committed the offense. We affirm. 
Facts
          E.A. was 17 months old when she was left at home in appellant’s care. E.A.’s
mother, Susan Bravo, had taken one of appellant’s children and one of her own ice-skating, leaving E.A. and appellant’s 18-month-old daughter with appellant. 
Unhappy that she was not allowed to go ice-skating, E.A. cried when Bravo and the
others left. E.A. could walk, talk, breathe, eat, and play like other normal toddlers
when Bravo left. When Bravo returned home around 10:00 p.m., appellant informed
Bravo that E.A. was sleeping, but had fallen in the tub earlier in the night. Appellant
took E.A. out of her room and brought her to the room that he shared with Bravo. 
Bravo noticed a red mark on E.A.’s head and noted that E.A. was “snoring heavily.” 
Bravo did not try to wake E.A. Bravo then showered, and appellant returned E.A. to
her room. Bravo considered appellant’s behavior in taking E.A. out of her room
while she was sleeping unusual because he had never done that before. Appellant
also professed his love to Bravo for the first time that night.
          Before leaving for work the next morning, appellant asked Bravo if she had
checked on the children during the night. He also called 20 minutes after leaving to
ask about E.A. Bravo stated that E.A. was not yet awake, but that she would probably
take her to the doctor because of the fall in the bathtub the previous night. Appellant
told Bravo not to take E.A. to the doctor because Child Protective Services would
become involved. Appellant called again about 40 minutes later and asked about
E.A. Around that time, E.A’s older sister, J.A., tried to wake E.A., but was unable to
do so. After trying to arouse E.A. several times, J.A. saw E.A. having what may have
been a seizure. A short time later, Bravo called 9-1-1. 
          The paramedics could not get E.A. to respond to verbal stimuli. The
paramedics noted multiple injuries, including those to E.A’s forehead, right foot,
back, and buttocks. After examining E.A., Dr. Len Tanaka diagnosed her with left
subdural hemorrhage, or bleeding on the left side of the brain. Dr. Tanaka concluded
that, in addition to the injuries noted by the paramedics, E.A. had bruising to her
neck, her pelvic region, her perineal, and her genitals and had suffered permanent
brain injuries caused by severe and forceful shaking. As a result, E.A. now requires
artificial help to breathe and to eat. Dr. Tanaka testified that E.A. would have shown
the effects of being violently shaken immediately. Dr. Tanaka’s diagnosis was further
confirmed by Dr. Helen Hittner, a pediatric ophthalmologist, who testified that E.A.
suffered retinal hemorrhaging that was caused by a violent back and forth motion, or
intentional shaking. 
          While in jail, appellant sent multiple letters to Bravo in which he professed his
love and his intent to marry her. Appellant repeatedly asked Bravo to give him
another chance and to forgive him. He wrote, “I ask God everyday to let you forgive
me.” Appellant never indicated for what he sought forgiveness. 
Factual Sufficiency
          In his sole point of error, appellant contends that the evidence was factually
insufficient to prove that he committed the offense of intentionally or knowingly
causing serious bodily injury to a child. Appellant does not contest the fact that E.A.
suffered serious bodily injury; rather, appellant claims that he did not cause the injury.
A.      Standard of Review
          In evaluating factual sufficiency, we consider all of the evidence in a neutral
light to determine whether the jury was rationally justified in finding guilt beyond a
reasonable doubt. Watson v. State, 204 S.W.3d 404, 414 (Tex. Crim. App. 2006). 
We set aside the verdict only if (1) the evidence is so weak that the verdict is clearly
wrong and manifestly unjust or (2) the verdict is against the great weight and
preponderance of the evidence. Johnson v. State, 23 S.W.3d 1, 11 (Tex. Crim. App.
2000). Under the first prong of Johnson, we cannot conclude that a verdict is “clearly
wrong” or “manifestly unjust” simply because, on the quantum of evidence admitted,
we would have voted to acquit had we been on the jury. Watson, 204 S.W.3d at 417. 
Under the second prong of Johnson, we cannot declare that a conflict in the evidence
justifies a new trial simply because we disagree with the jury’s resolution of that
conflict. Id. Rather, before concluding that evidence is factually insufficient to
support a verdict under the second prong of Johnson, we must be able to say, with
some objective basis in the record, that the great weight and preponderance of the
evidence contradicts the jury’s verdict. Id. We must also discuss the evidence that
most undermines the jury’s verdict. See Sims v. State, 99 S.W.3d 600, 603 (Tex.
Crim. App. 2003).
B.      Sufficiency of the Evidence
          Bravo and J.A. testified that E.A. was not injured when they left to go ice-skating around 6:00 in the evening. E.A. was crying and asking to go with them, but
could walk and talk normally. Based on testimony that E.A. was never seen
conscious again, that E.A. did not wake up when appellant carried her about the
house, that the house remained silent throughout the night, and that J.A. could not
wake E.A. the next morning, the jury could have made a reasonable deduction that
E.A. suffered the traumatic event that caused her severe injuries during the time that
Bravo and the children were ice-skating and E.A. was left in appellant’s sole care. 
          Appellant contends that evidence of his “mere presence” at the time that E.A.
sustained the injuries should not suffice to establish his guilt. However, appellant
acknowledges that the case law is “replete with holdings that when an adult defendant
has had sole access to a child at the time its [sic] injuries are sustained, the evidence
is sufficient to support a conviction for injury to a child.” See Bryant v. State, 909
S.W.2d 579, 583 (Tex. App.—Tyler 1995, no pet.); Butts v. State, 835 S.W.2d 147,
150-51 (Tex. App.—Corpus Christi 1992, pet. ref’d). 
          The medical evidence showed that the injuries to E.A. would have been
immediately apparent and that those injuries were the result of intentionally forceful
shaking.


 When Bravo left for ice-skating, E.A. was crying, talking, and walking. 
Bravo never again saw E.A. in a state physically capable of those things. 
Additionally, appellant’s unusual behavior in carrying E.A. around the house and
repeatedly calling from work to check on her, which he never otherwise did, and his
requests for forgiveness, albeit vague, written to Bravo from jail support an inference
of guilt. See Yost v. State, 222 S.W.3d 865, 876 (Tex. App.—Houston [14th Dist.]
2007, pet. denied) (explaining that, although proof of motive or of request for
forgiveness is not required, these are significant circumstances indicating guilt).
          Appellant contends that testimony that E.A. fell down the stairs approximately
10 days before she exhibited the severe injuries renders the evidence contrary to the
verdict. Appellant suggests that Bravo’s testimony that E.A. “was not okay” and
“was very quiet” after the fall should undermine confidence in the jury’s verdict. 
However, appellant told investigators that E.A. acted normally after her fall down the
stairs, exhibiting no injuries other than a sprained ankle. Furthermore, the medical
evidence is uncontradicted that the injuries that E.A. exhibited when the ambulance
arrived were immediately symptomatic and could not have been sustained 10 days
prior. 
          Appellant testified that E.A. and his daughter played, ate, bathed, and went to
sleep without incident on the night that she was left alone in his care while Bravo and
the others went ice-skating. Appellant contradicted much of Bravo’s testimony
regarding what occurred after she returned from skating and the next morning. 
Appellant denied that he disciplined his own children by whipping and kicking,
contrary to Bravo and J.A.’s testimony. Appellant denied ever shaking E.A.
          The fact-finder is the exclusive judge of the witnesses’ credibility and the
weight to be given their testimony. Jones v. State, 944 S.W.2d 642, 648 (Tex. Crim.
App. 1996). As the determiner of the credibility of the witnesses, the fact-finder may
choose to believe all, some, or none of the testimony presented. Cain v. State, 958
S.W.2d 404, 407 n.5 (Tex. Crim. App. 1997). The jury is free to accept some
testimony over that of other witnesses, including that of the defendant, and to
disregard any inconsistencies. Glockzin v. State, 220 S.W.3d 140, 147 (Tex.
App.—Waco 2007, pet. ref’d); see also Perez v. State, 113 S.W.3d 819, 838–39 (Tex.
App.—Austin 2003, pet. ref’d). As an appellate court, we must avoid re-weighing
the evidence and substituting our judgment for that of the fact-finder. Johnson v.
State, 967 S.W.2d 410, 412 (Tex. Crim. App. 1998); see Wilson v. State, 863 S .W.2d
59, 65 (Tex. Crim. App. 1993); King v. State, 29 S.W.3d 556, 562 (Tex. Crim. App.
2000). We defer to the jury’s implicit findings. The State’s evidence was not so
obviously weak or contrary to the overwhelming weight of the evidence as to be
factually insufficient. We hold that factually sufficient evidence supports the verdict. 
We overrule appellant’s sole point of error.
 Conclusion
          We affirm the judgment of the trial court.



                                                                        Tim Taft
Justice
 
Panel consists of Justices Taft, Keyes, and Alcala.

Do not publish. See Tex. R. App. P. 47.2(b).