Robert Erwin BRYANT, Appellant,

v.

The STATE of Texas, Appellee.

No. 12–94–00243–CR.

Court of Appeals of Texas, Tyler.

Sept. 29, 1995.

Kenneth L. Combs, Hawkins, for appellant.

Edward J. Marty, Tyler, for appellee.

HOLCOMB, Justice.

A jury convicted Robert Bryant of aggravated injury to a child, assessed his punishment at thirty-five years in prison and fined him $10,000. His co-defendant, who was the victim's mother, was charged with criminal neglect. In two points of error, Bryant challenges the sufficiency of the evidence. In the remaining four points, he contends that the court erred when it: (1) denied his motion to sever; (2) allowed an audiotape recording between him and his probation officer to be admitted into evidence; (3) overruled his objection to the admission of photographs of C.L., the victim, into evidence; and (4) allowed Dr. Rogers to testify that Bryant had the smell of alcohol on his breath when he entered the emergency room with C.L. We will **affirm.**

Five months prior to the incident in question, Mary Langford and her 10–month–old daughter, C.L., moved in with Bryant. Around 5:00 p.m. on August 26, 1993, Langford went to work and left C.L. with Appellant. According to Langford, C.L. did not have any bruises on her and did not appear to have anything wrong with her at that time. Although the facts are somewhat conflicting as to the series of events that occurred after Langford left for work, it is undisputed that Bryant was the only adult who was with C.L. from 5:00 p.m. until 9:30 p.m. that evening. At approximately 9:30 p.m., Bryant called Langford and told her that he had taken C.L. to the hospital because she appeared to have had a seizure. Langford immediately left her job and went to the hospital.

Dr. Paul Prescott and Dr. Rick Rogers examined C.L. in the emergency room and determined that she had severe fractures to both sides of her skull, a brain hemorrhage, fractures to both legs and bruises on her body. Dr. Prescott and Dr. Rogers both agreed that C.L.'s seizure was a result of an acute injury to the brain, which was inflicted on C.L. within thirty minutes before the sei-

zure. Dr. Rogers testified that when he talked to Bryant in the emergency room, Bryant smelled like alcohol and did not offer any explanation for C.L.'s injuries.

In Bryant's second and third points of error, he challenges the sufficiency of the evidence to support his conviction. He contends that, because the evidence was circumstantial, the State failed to exclude every other reasonable hypothesis other than his guilt. We do not agree.

 In a circumstantial evidence case, the State is no longer required to negate every reasonable hypothesis before it convicts a defendant. *Geesa v. State,* 820 S.W.2d 154, 159 (Tex.Cr.App.1991). The correct standard for reviewing a sufficiency question on appeal is whether, after reviewing all the evidence in the light most favorable to the verdict, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979); *Butler v. State,* 769 S.W.2d 234, 239 (Tex.Cr.App.1989). Under this standard, we are not to act as a thirteenth juror in assessing the evidence. *Butler v. State,* 769 S.W.2d at 239. Rather, we are to position ourselves as a safeguard and ensure that the factfinder has made a rational decision. *Moreno v. State,* 755 S.W.2d 866, 867 (Tex.Cr.App.1988). Merely because Bryant presented a different version of the events does not mean that the evidence supporting his conviction was lacking. *Anderson v. State,* 701 S.W.2d 868, 872 (Tex. Cr.App.1985). A jury may chose to believe or disbelieve all or any portion of a witness' testimony, even though the witness' testimony may have been contradicted. *Sharp v. State,* 707 S.W.2d 611 (Tex.Cr.App.1986), *cert. denied,* 488 U.S. 872, 109 S.Ct. 190, 102 L.Ed.2d 159 (1988). When faced with conflicting testimony, we must presume that the trier of fact has resolved any such conflict in favor of the prosecution and we must defer to that resolution. *Turro v. State,* 867 S.W.2d 43, 47 (Tex.Cr.App.1993); *Johnson v. State,* 673 S.W.2d 190, 195 (Tex.Cr.App.1984).

With these principles in mind, we will review the evidence presented at trial. Dr. Prescott, Associate Professor of Pediatrics at the Child Abuse Clinic at Southwestern Medical School in Dallas, testified that he had worked extensively with the Reach Clinic in Dallas, and had been involved in the investigation of over 4,000 cases of children under the age of one year who had been the subject of abuse. On the night that C.L. was admitted to the hospital, Dr. Prescott examined her and determined that the force necessary to cause the trauma to her head, to her skull, and a brain hemorrhage was equal to dropping C.L. on her head onto concrete from fifteen to twenty feet in the air. According to Dr. Prescott, the blow was so powerful it ruptured C.L.'s right eye. In his opinion, C.L.'s symptoms of breathing difficulty and seizures at the hospital would have appeared within fifteen to thirty minutes after the trauma was inflicted on her. As a result of various tests that Dr. Prescott administered to C.L., he was able to rule out infections or any natural phenomenon as the cause of C.L.'s medical problems. In Dr. Prescott's opinion, C.L.'s injuries were so severe that she would have died within a few hours had she not received medical care.

As for the various fractures to C.L.'s legs, Dr. Prescott testified that C.L.'s left thigh and right shin bone had been fractured within a few days of his examination and that another fracture to C.L.'s leg had occurred within two weeks prior to his examination of her.

Tyler Police Officer Beverly Grage testified that she was assigned to investigate child-abuse matters for the police department. Upon receiving a complaint in this case, Grage began her investigation by getting a statement from Mary Langford. In this statement, Langford stated that, during the few months that she had lived with Bryant, she had never seen him lose his temper or spank his own two daughters. If his daughters misbehaved, Langford stated that Bryant would make them sit in the corner or send them to their rooms for a short period of time to "straighten up." However, according to Langford, C.L. began having unexplained injuries, bruises, and bites when she would stay with Bryant. Langford stated that he allowed a new puppy to nip at C.L, knock her over and pull her by

the hair across the floor. On another occasion, Langford noticed that C.L. had a bruise from ear to ear under her chin. Bryant explained to Langford that he had put C.L.'s chin on the edge of the coffee table and that she fell from the table onto a "jungle gym" swing.

On August 26, 1993, Langford stated that she picked up Bryant at work and took him home. When Langford left for work around 5:00 p.m. that evening, C.L. was crying, but according to Langford, she did that every time that she saw her mother leave. At the hospital, Bryant told Langford that after Langford left for work C.L. had three loose bowel movements in a short period of time. Each time, Bryant claimed that he cleaned her up and took her back to the living room to play. After he took her back in the living room the third time, Bryant said C.L. let out a couple of screams and "stiffened up." He said that he then took C.L. to a neighbor, who drove them to the hospital.

As time passed and information about C.L.'s severe injuries were known, Bryant's version of the series of events that occurred that night varied. In his statement to Grage, Bryant stated that C.L. was constipated and crying, so he gave her a cup of water and sat her down in the living room floor. He then stated that C.L. began crawling around and "flopping" over on the floor as if she was exhausted. Bryant stated that this behavior continued until around 6:00 p.m. when C.L. began having diarrhea. After cleaning C.L. up, Bryant stated that he fed her some "Hamburger Helper" and orange soda, but noticed that C.L. had a fever, so he ran cool water over her for about ten minutes. He said that C.L. began vomiting in the bathtub and again had diarrhea. He cleaned C.L. again and put her on the couch while he fed his daughters in the kitchen. When he walked back into the living room, he noticed that C.L. was leaning forward. C.L. then flipped forward on the couch and hit the floor with the back of her head.

Next, Bryant remembered that C.L. found a penny, put it in her mouth and began choking. He stated that "[he] hit her in the back of the head, not hard, and turned her around and did a Heimlich on her, and after three pushes on her stomach she spit the penny out." About ten minutes later, C.L. screamed two times. As Bryant picked her up, her eyes rolled back in her head and her body became rigid. He shook C.L. and placed her in a tub, running some water over her. He then ran across the street to get a ride to the hospital and attempted to administer mouth-to-mouth resuscitation on her. Bryant ended his statement by stating, "I told them she had a seizure but not about anything else because I was afraid they would think I hurt her intentionally."

Lee Proudfoot, an investigator with the Texas Department of Human Resources, testified about his conversations with Bryant concerning the incident. Bryant blamed C.L.'s injuries on a fall that she had two weeks prior to this incident. He did not mention anything to Proudfoot about C.L. swallowing a penny on the night that she had a seizure.

After the State rested, Betty Bryant, Bryant's mother, testified that she had never seen her son spank a child or lose his temper. She denied that her son drank. Bryant admitted that she had seen bruises on C.L. in the past, but that Langford had explained to her that C.L. had gotten the bruises from the baby sitter. Bryant's mother, who described C.L. as a "whiny, crying" child, stated that she saw C.L. the day before the incident in question and described her as looking "white and sickly".

Elvenio Melchor, Robert Bryant's neighbor, testified that he drove Bryant and C.L. to the hospital. Melchor stated that he did not hear any unusual screams coming from Bryant's house and did not notice alcohol on Bryant's breath. On cross-examination, Melchor stated that Bryant told him that C.L. had a seizure, but that he did not say anything about C.L. falling on her head or swallowing a penny.

The substance of Bryant's testimony at trial was basically the same series of events that he had given to Officer Grage. Bryant said that C.L. was sick when Langford left for work. On cross-examination, Appellant admitted that he did not tell the doctor that C.L. had swallowed a penny or that she had

fallen off of the couch. He knew that she had previously fallen on the floor and hit her head and had also fallen in her playpen, hitting her head on a wooden toy. Bryant also admitted that his dog had bitten and scratched C.L. about ten times. He denied that he had been drinking that night and denied having any knowledge that C.L.'s legs were fractured.

Mary Langford testified that C.L. had previously fallen in her playpen; however, she denied that C.L. was sick when she left for work that day. Langford told the jury that she thought that C.L. was "cranky" when she left because she was teething. She characterized Bryant as appearing to care more for his puppy than he cared for C.L.

■ After reviewing the record, we hold that the evidence was sufficient to support Bryant's conviction. The jury was entitled to believe that C.L.'s mother left her in Bryant's care around 5:00 p.m. in a relatively healthy condition. The evidence is undisputed that, when Bryant took C.L. to the emergency room at around 9:00 p.m., she was severely injured. The examining physicians agreed that the child's injuries were consistent with a trauma that had been incurred within thirty minutes of the time that she was in the emergency room. Likewise, the evidence is undisputed that Bryant was the only adult in possession of C.L. during that time. Having found that Bryant's conviction is supported by the evidence, points of error number two and three are overruled.

In his first point of error, Bryant contends that the court erred when it denied his motion to sever his case from Langford's case. On February 10, 1994, Bryant filed an amended motion for severance, which alleged that he had previously been convicted of driving a vehicle while his license was suspended. His co-defendant, Langford, did not have any prior convictions. Therefore, Bryant cites *Jackson v. State*, 504 S.W.2d 488 (Tex.Cr.App.1974), and argues that he was prejudiced when the court tried him at the same time that it tried Langford. Although the record reflects that Bryant filed two motions to sever, the record does not reflect that the motions were ever ruled on by the court.

■ Article 36.09 establishes that a defendant may sever his cause from that of a co-defendant if he can prove that, if not severed, the non-severance will prejudice the movant's ability to receive a fair trial. TEX. CODE CRIM.PROC.ANN. art. 36.09 (Vernon 1981). If the motion for severance is not supported by evidence, its denial is not an abuse of discretion. *Stokes v. State*, 853 S.W.2d 227, 241 (Tex.App.—Tyler 1993, no pet.). In distinguishing the *Jackson* case, the court held that a defendant has a right to severance where a *co-defendant* had an admissible prior conviction. Here, Bryant cannot complain that his prior offense would be prejudicial to Langford; only Langford can make that argument. Furthermore, there is no evidence in the record to show that Bryant was prejudiced by the joinder of Langford as co-defendant. *Ransonette v. State*, 550 S.W.2d 36, 41 (Tex.Cr.App.1976); *Rivello v. State*, 476 S.W.2d 299, 300 (Tex.Cr. App.1971). Bryant's first point is overruled.

In his fourth point through sixth points, Bryant contends that the court erred when it: (1) allowed an audiotape recording between him and his probation officer to be admitted into evidence; (2) overruled his objection to the admission of photos of C.L. into evidence; and (3) allowed Dr. Rogers to testify that he had the smell of alcohol on his breath when he entered the emergency room with C.L. In all three of these points, Bryant cites no argument or authority in support of his contentions; therefore, he has presented nothing for review. TEX.R.APP.P. 74(f); *Ford v. State*, 870 S.W.2d 155, 157 (Tex.App.—San Antonio 1993, pet. ref'd). Appellant's fourth, fifth and sixth points of error are overruled.

The judgment of the trial court is **affirmed.**