PD-0883-15

PD-0883-15
COURT OF CRIMINAL APPEALS
AUSTIN, TEXAS
Transmitted 7/15/2015 3:06:42 PM
Accepted 7/17/2015 2:03:35 PM
ABEL ACOSTA
CLERK

NO._____

# IN THE COURT OF CRIMINAL APPEALS OF TEXAS

FILED IN
COURT OF CRIMINAL APPEALS

July 17, 2015

ABEL ACOSTA, CLERK

**JAVIER URIAS,**
*Appellant*

**v.**

**THE STATE OF TEXAS,**
*Appellee*

From the Eighth Court of Appeals

No. 08-12-00090-CR

Affirming Conviction in Cause Number 20090D03338

## APPELLANT'S PETITION FOR DISCRETIONARY REVIEW

JAIME GÁNDARA
*El Paso County Chief Public Defender*

William Robinson Cox
*First Assistant*
State Bar No. 00792933
500 E. San Antonio, Room 501
El Paso, Texas 79901
Tel. No. 915.546.8185
Fax 915.546.8186
wcox@epcounty.com

Benjamin Joseph Gutiérrez
*Solo Practitioner*
State Bar No. 24094693
Post Office Box 41
El Paso, Texas 79940
Tel. No. 915.239.0793
Fax No. 866.399.5268
bjgutierrez@miners.utep.edu

**ORAL ARGUMENT REQUESTED**

## ORAL ARGUMENT REQUESTED

The Appellant submits that oral argument would aid this Court in its decisions with the issue presented of sufficiency of evidence for serious injury to a child when evidence amounts to mere presence and strong suspicion or mere probability to prove *corpus delicit*. This Court's holdings in *Plunkett v. State*, 580 S.W.2d 815 (Tex. Crim. App. 1978) and *Johnson v. State*, 673 S.W.2d 190 (Tex. Crim. App. 1984) remain good law and provide precedence in these matters. The El Paso Courts of Appeals' holding below declines to follow this Court.

## IDENTITIES OF PARTIES AND COUNSEL

Pursuant to Texas Rules of Appellate Procedure, Rule 38.1(a), Appellant offers the following names of all parties, trial and appellate counsel:

Appellant:                Javier Urias

Counsel:                Jamie Gándara
El Paso County Public Defender

William Robinson Cox
First Assistant
State Bar No. 00792933
500 East San Antonio, Room 501
El Paso, Texas  79901

Benjamin Joseph Gutiérrez
*Solo Practitioner*
State Bar No. 24094693
Post Office Box 41
El Paso, Texas 79940

Appellee:          State of Texas

Counsel:          Jaime Esparza
El Paso County District Attorney
500 East San Antonio, Suite 201
El Paso, Texas 79901

Trial Court Defendant:   Javier Urias

Counsel:          Joseph D. Vasquez
300 East Main, Suite 700
El Paso, Texas 79901
(Counsel in Eighth Court of Appeals)

State's Trial Court Prosecutor:  El Paso County District Attorney

Counsel:          Alyssa Perez and Humberto Acosta
Assistant District Attorneys

State's Court of Appeals Counsel:  Joe Monsivais
Appellant Division Chief of El Paso County
District Attorney Office

Trial Court:          243rd Judicial District Court
Honorable Bill Hicks Presiding

# TABLE OF CONTENTS

ORAL ARGUMENT REQUESTED.............................................................................i

IDENTITY OF PARTIES AND COUNSEL ........................................................ ii

TABLE OF CONTENTS................................................................................... iii

INDEX OF AUTHORITIES............................................................................... iii

STATEMENT OF THE CASE............................................................................iv

GROUNDS FOR REVIEW ................................................................................v

ISSUES PRESENTED.......................................................................................vi

STATEMENT OF THE FACTS ..........................................................................1

ARGUMENT ....................................................................................................3

**Issue No. 1**: It is an error to affirm conviction of injury to a child as legally sufficient when evidence amounts to mere presence and strong suspicion or mere probability to prove *corpus delicit*? **Yes.**................ **3**

CONCLUSION ................................................................................................**16**

PRAYER .........................................................................................................**18**

CERTIFICATE OF SERVICE ...........................................................................**18**

CERTIFICATE OF COMPLIANCE....................................................................**19**

COURT OF APPEAL'S OPINION............................................................**Appendix**

# INDEX OF AUTHORITIES

**Cases**

*Bryant v. State*, 909 S.W.2d 579 (Tex. App.— Tyler 1995) .....................**8, 9, 10, 14**

*Butts v. State*, 835 S.W.2d 147 (Tex. App. – Corpus Christi 1992)..........**6, 7, 10, 13**

*Crawford v. State*, 2014 WL 5878112 (Tex. App.– Ft. Worth 2014). .......**10, 11, 14**

*Elledge v. State*, 890 S.W.2d 843 (Tex. App.– Austin 1994). ............**7, 8, 10, 13, 14**

*Garcia v. State*, 16 S.W.3d 401 (Tex. App. — El Paso 2000) ...............**9, 10, 12, 14**

*Hooper v. State*, 214 S.W.3d 9 (Tex. Crim. App. 2007) .........................................**4**

*Jackson v. Virginia,* 443 U.S. 307 (1979) .............................................................**3**

*Johnson v. State*,
        673 S.W.2d 190 (Tex. Crim. App. 1984) ......... **3, 4, 5, 6, 7, 11, 13, 14, 15, 16**

*Plunkett v. State*,
        580 S.W.2d 815 (Tex. Crim. App. 1978) ..... **3, 5, 6, 7, 8, 9, 10, 13, 14, 15, 16**

*Urias v. State,*
        2014 WL 1259397 (Tex. App.-- El Paso, Mar. 26, 2014).............**v, 11, 12, 16**

## IN THE COURT OF CRIMINAL APPEALS OF TEXAS

**JAVIER URIAS,**
*Appellant*

**v.**

**THE STATE OF TEXAS,**
*Appellee*

## APPELLANT'S PETITION FOR DISCRETIONARY REVIEW

**TO THE HONORABLE COURT OF CRIMINAL APPEALS:**

COME NOW, Javier Urias, appellant herein, and respectfully moves this Court to grant discretionary review, pursuant to Texas Rules of Appellate Procedure 66 *et. seq.*, and would show the Court as follows:

### STATEMENT OF THE CASE

On July 21 2009, Javier Urias was indicted for one count of allegedly intentionally and knowingly causing serious bodily injury to a child younger than fifteen years of age, J. A.[1], on or about March 25, 2009. Mr. Urias' indictment stated three paragraphs by which he could have caused serious injury to J.A.: (1) striking J.A. about the head with an unknown object, (2) striking J.A.'s head

---

[1] As per the spirit of TRAPP 9.8, children will be referred to by initials only.

against an unknown object, or (3) shaking J. A.'s body. (CR 2-3)[2]. At trial, a jury convicted Mr. Urias without specifying which paragraph of the indictment their decision was held. RR 6 at 6-8. The same jury assessed punishment to be confinement for 45 years and a $10,000 fine. (6 RR 112-116) (2 CR 656)

## STATEMENT OF PROCEDURAL HISTORY

In January 2012, Javier Urias was convicted by a Jury for first degree felony of serious injury to a child in the 243rd Judicial District Court, the Honorable Bill Hicks Presiding. Mr. Urias timely filed notice of appeal. (2 CR 680) The Eighth Court of Appeals affirmed his conviction in an unpublished opinion on March 26, 2014. *Urias v. State,* 2014 WL 1259397 (Tex. App.-- El Paso, Mar. 26, 2014).

A petition for discretionary review was not previously filed. A mandate issued from the Eighth Court of Appeals on September 12, 2014. Mr. Urias filed a *pro se* writ under § 11.07 of the Texas Code of Criminal Procedure requesting the opportunity to file an out of time petition for discretionary review. This court granted that request on May 20, 2015. The mandate issued from that holding on June 15, 2015. This petition follows.

## GROUNDS FOR REVIEW

---

[2] Citations to the clerk's record will be denominated as CR and the page number, to the reporter's record as RR, volume and page number. State's exhibits will be described as SX and number, defense exhibits as DX and number.

This Court should grant discretionary review, because the Eighth Court of Appeals decision below conflicts with applicable decisions by this Court's on an important question of law. Tex. R. App. Proc. 66.3(c)

## ISSUES PRESENTED

1.  It is an error to affirm conviction of injury to a child as legally sufficient when evidence amounts to mere presence and strong suspicion or mere probability to prove *corpus delicit*? ............................................................................................**Yes**

## STATEMENT OF FACTS

On March 25, 2009, Appellant, Javier Urias, called 911 to report an emergency concerning his fifteen month old stepson J.A.. (CR 210) (SX 1) (SX 3) A team lead by Dr. Alan Tyroch treated J.A. at R.E. Thomason General Hospital in El Paso, Texas. J. A. was diagnosed with acute subdural hematoma, a head injury. (3 RR 105) Fortunately, J.A. had neither neck injuries nor any internal injuries. (3 RR 154-155) J.A. received prompt medical attention that lead to a prognosis of J.A. being able to live a normal life. (3 RR 116-117) However, there was evidence that J. A. also had another older brain injury. (3 RR 114) Accordingly, Dr. Tyroch and his team have "a very low threshold to look for child abuse in any child that comes in, especially a child that comes in with a head injury." (4 RR 139) On Dr. Tyroch's direction, an ophthalmology expert days later assessed J.A.'s eyes for retinal hemorrhages or bleeding in the retinal fields. *Id*. In a one page medical report Dr. Adams noted the presence of retinal bleeding to which Dr. Tyroch cited as evidencing abuse.

Another physician, Dr. Fadi Hanbali, assessed J.A.'s prior injury to be three weeks to four months old. (4 RR 105, 120) Dr. Hanbali believed the latest trauma occurred within 72 hours prior to J.A.'s admission to the hospital and conceded it was possible the symptoms manifested then even though Mr. Urias "did not lay a hand on [J.A.]." (4 RR 123-125) Other witnesses testified Mr. Urias was never

1

violent with the children, never hit them, and never spanked them. (4 RR 172) No one saw anyone hit J.A., strike J.A., or hit J.A.'s head against something. (4 RR 58, 135)

On the day of J.A. sustained an acute subdural hematoma Mr. Urias reported on the 911 call that J. A. fell off the bed. All of Mr. Urias' subsequent statements consistently recounted his initial statements. (CR 210) (SX 1) (SX 3) (3 RR 45-46) Mr. Urias explained that J.A. had woken up from a nap and was sat up on a bed whereupon Mr. Urias left the room to get diaper wipes. When Mr. Urias returned, J.A. was on the floor screaming and crying, then J.A.'s mouth locked whereupon breathing became shallower and J.A unresponsive. Mr. Urias called an ambulance and attempted to "blow into his mouth" but could not because the baby's jaw was clenched and his mouth was closed. (CR 210) (SX 1) (SX 3) (3 RR 45-46) Mr. Urias met emergency personal with J.A. unconscious in Urias' arms. (3 RR 23)

The trier of fact found Mr. Urias guilty of serious injury to a child as per the indictment containing three alternative means of causation[3] and assessed a punishment of 45 years imprisonment and a $10,000,000 fine. Mr. Urias timely appealed where the Eighth Court of Appeals denied Mr. Urias any relief. Accordingly, Mr. Urias now presents this petition for discretionary review to the Texas Court of Criminal Appeals.

---

[3] Paragraph a, striking J.A. about the head; paragraph b, striking J.A.'s head against an unknown object; and paragraph c, shaking J.A.'s body. (CR 2-3)

2

# ARGUMENT

**I.** **Mr. Urias' Mere Presence when J.A. was admitted to the Hospital and Evidence Amounting Only to Strong Suspicion or Mere Probability of Mr. Urias' Culpability is Legally Insufficient to Prove *Corpus Delicit*.**

The critical inquiry on review of the sufficiency of the evidence to support a criminal conviction must be to determine whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 318 (1979). A mere modicum of evidence cannot rationally support a conviction beyond a reasonable doubt. *Id*. at 320.

Each fact need not point directly and independently to the guilt of the accused, however, as the cumulative effect of all the incriminating facts may be sufficient to support the conviction. *Plunkett v. State*, 580 S.W.2d 815 (Tex. Crim. App. 1978). Complicity in an offense is not show by mere presence alone when the proof shown amounts to only strong or mere probability and there is not showing that the act was committed intentionally and knowingly. *Johnson v. State*, 673 S.W.2d 190, 197 (Tex. Crim. App. 1984). There must be legal and competent evidence pertinently identifying the defendant with the transaction constituting the offense charged against him. *Id*. at 196. The fact that the trier of fact is entitled to disregard the defendant's version of events does not mean that the missing elements of the offense are supplied by rejection. *Id*. Juries are not permitted to come to conclusions based on mere speculation or factually unsupported inferences

or presumptions. *Hooper v. State*, 214 S. W. 3d 9, 15-16 (Tex. Crim. App. 2007); *also see Johnson* at 196. In *Hooper* this Court further explained:

> [A]n inference is a conclusion reached by considering other facts and deducing a logical consequence from them. Speculation is mere theorizing or guessing about the possible meaning of facts and evidence presented. A conclusion reached by speculation may not be completely unreasonable, but it is not sufficiently based on facts or evidence to support a finding beyond a reasonable doubt.

Id. at 16.

The record shows Mr. Urias was in sole possession of J.A. for about thirty-five minutes prior to J.A. being admitted to a hospital. (3 RR 159-60) J.A. did not sustain permanent injuries and will live a normal life. (3 RR 116-17) The State charged Mr. Urias by indictment with serious bodily injury to J.A. by three alternative means. (CR 2-3) Mr. Urias' guilt was found without denoting the specific means of his culpability. *Id*. Mr. Urias received a prison sentence of forty-five years. (6 RR 112) El Paso's Court of Appeals held evidence was sufficient to support a finding of guilt beyond a reasonable doubt based on the two inferences that Mr. Urias was present at time of injury and characteristics of the injury were dispositive that an accident did not occur. *See Urias v. State,* 2014 WL 1259397 (Tex. App.-- El Paso, Mar. 26, 2014).

A review of associated case law provides a greater appreciation for the Courts of Appeals divergence and circumvention of this Court precedential holding:

**A. This Court has Held in Cases Involving Serious Injuries to Children Cumulative Incriminating Evidence Supports Conviction, but Mere Presence with Only Strong Suspicion or Mere Probability of Culpability is Insufficient.**

In *Plunkett v. State* the cumulative effect of incriminating evidence supported conviction of murder when defendant's actions were injurious despite his supposed benevolent intent. *Plunkett v. State*, 580 S.W.2d at 821. Larry Plunkett described finding A.D.P. lying on the floor in her bedroom when he attempted to resuscitate her and may have used too much force. *Id*. at 820. Upon A.D.P.'s death, the autopsy showed injuries such as some forty bruises all over her body, skull fractures, and tears to organs: heart, liver, spleen, pancreas, and intestinal tissues. *Id*. at 818-19. Mr. Plunkett argued the evidence was only sufficient to demonstrate he attempted to help A.D.P. but was insufficient to show A.D.P.'s death was intentionally or knowingly caused. *Id*. at 823. Texas' Court of Criminal Appeals of Texas affirmed conviction. *Id*. at 825. This Court reasoned that the law of accident focuses on actions, not causation. *Id*. at 823. Each fact need not point directly and independently to guilt, the cumulative effect of all the incriminating facts was sufficient to support Mr. Plunkett's conviction. *Id*. at 821.

In *Johnson v. State* this Court reversed conviction holding *corpus delicti* is insufficiently meet when defendant's version of child's death and serious injuries were negated facilitating conviction by default without showing defendant committed any criminal act. *Johnson v. State*, 673 S.W.2d at 196. Karl Johnson explained how he found B.F. under his vehicle when the car accidently fell off the jack. *Id.* at 192. Several states' witnesses, including experts, described their investigation showed the injuries in conjunction with the scene were not consistent with Mr. Johnson's story. *Id.* at 192-93. A forensic pathologist stated with reasonable medical certainty the trauma was caused by a blow with a very blunt object. *Id.* at 192. The extent of Mr. Johnson's relationship with B.F. was unclear, but there was no showing of any prior child abuse or hostility. *Id.* at 194. Texas' Court of Criminal Appeals reversed conviction. *Id.* at 197. This Court reasoned mere presence alone is not sufficient proof, even when coupled with strong or mere probability of culpability. *Id*. The trier of fact was entitled to disregard Mr. Johnson's explanation but that did not mean that the missing elements of the crime were supplied by showing that Mr. Johnson was complicit in the crime alleged. *Id.* at 196-97

**B. Texas' Courts of Appeals have Held Mere Presence is Sufficient in Many Circumstances.**

In *Butts v. State* the court found *Plunkett* permitted finding *corpus delicit* when characteristics of the injuries established culpability and declined following *Johnson* holding inapplicability. *Butts v.* State, 835 S.W.2d 147, 151 (Tex. App. – Corpus Christi 1992). Baby sitter Patty Butts had no explanation for J.A.'s knot on his head, skull fracture, and the resulting permanent injuries of paralysis, blindness, and severe learning disabilities. *Id.* at 148. Ms. Butts and the state contested when the injuries could have occurred. *Id.* State expert concluded that the severity of J.A.'s injuries and the characteristics were caused by either being picked up, slammed, or thrown, and were equivalent to falling on concrete from a two-story window. *Id.* at 149-50. Corpus Christi Court of Appeals affirmed conviction. *Id.* at 152. The court reasoned that, unlike *Johnson,* the jury's conclusion was supported by state's witnesses' testimony regarding characteristics of injuries sustained while in the exclusive possession of Ms. Butts supported the jury's prerogative of holding that Ms. Butts intentionally caused the injuries. *Id.* at 151. The court citing to *Plunkett* found a rational juror may find from the circumstances that an offense was committed by Ms. Butts. *Id.*

In *Elledge v. State* the court held expert testimony noting implausibility of injuries occurring other than when defendant was in sole custody of child established he was the perpetrator. *Elledge v. State*, 890 S.W.2d 843, 846 (Tex. App.– Austin 1994). Richard Elledge, father of R.G.E., described to R.G.E.'s

mother that their five week old baby had fallen between the pillow of the bed and the railing managing to wrap his arm around one of the bars. *Id*. at 845. Shortly after the parents decided it was necessary to bring R.G.E. to the hospital: R.G.E. died two days later. *Id*. The autopsy and other medical testimony showed R.G.E. suffered massive trauma to his brain and right side skull fracturing caused by a considerable blow to the head. *Id*. A physician further testified that injuries were very acute that it was not plausible for the injuries to have occurred more than hour prior to hospital admittance. *Id.* at 848. The record undisputedly placed Mr. Elledge as the only person alone with the baby when the fatal injury was sustained. *Id*. at 847. Among the three points of error Mr. Elledge appealed, sufficiency of evidence was not one of them. Austin's Court of Appeals affirmed conviction. *Id.* at 849. The court while addressing the weight of newly discovered evidence reasoned that the circumstances permitted culpability when undisputed medical testimony placed Mr. Elledge as the only person alone with R.G.E. when the fatal injury was inflicted. *Id.* at 847.

Like *Plunkett*, in *Bryant v. State* the defendant claims he intentionally acted with benevolence but did not intend the injurious results to a child under his care. *Bryant v. State*, 909 S.W.2d 579, 583 (Tex. App.— Tyler 1995). Robert E. Bryant had sole possession of C.L. for about four hours before her admittance to the hospital where his account of events was little more than unexplained seizure. *Id.*

at 581. C.L. suffered from fractured legs, bruises, and brain injuries sustained from severe skull fractures and hemorrhaging. *Id.* at 580. One physician noted Mr. Bryant smelled of alcohol the night in question and another physician ruled out infections or any natural phenomenon as potential causes. *Id.* at 581. Both physicians agreed the brain injuries occurred within thirty minutes prior to admittance and various other fractures occurred within days or a couple weeks thereof. *Id* at 580-81. Mr. Bryant claimed C.L.'s injuries occurred prior to his sole possession, but C.L.'s mother denied that C.L. was sick on the day in question. *Id.* at 582-83. As information became available as to C.L.'s injuries, Mr. Bryant's version of events varied as he described at points in time C.L. had fallen of the couch and hit the back of her head on the floor, he also remembered hitting C.L. on the back of the head and pushing C.L.'s stomach to dislodge a penny C.L. was choking on, and Mr. Bryant even admitted to shaking C.L. at some point. *Id.* at 582. During trial, Mr. Bryant said he held back on his disclosure of events since he was afraid it would be thought he intentionally hurt C.L.. *Id.* Tyler's Court of Appeals affirmed conviction. *Id.* at 583. The court reasoned the evidence showed C.L. was in relatively healthy condition when Mr. Bryant took possession of C.L. and the acute nature of injuries demonstrated the trauma occurred thirty minutes prior to admittance. *Id.* Therefore, it was undisputedly that injuries were sustained

when C.L. was in the sole possession of Mr. Bryant and the state did not need to disprove other reasonable hypotheses, such as Mr. Bryant's account(s). *Id.*

Like *Plunkett*, the defendant in *Garcia v. State* admitted to acts that would directly result in injuries as the child was found to sustain when the adult defendant had sole access to child and evidence was upheld as sufficient. *Garcia v. State*, 16 S.W.3d 401, 406 (Tex. App.- El Paso 2000). Miguel A. Garcia admitted while taking care of his three month old daughter C.G. he shook her, punched her in the stomach, and karate chopped her nose the day C.G. was pronounced dead. *Id.* at 405. Mr. Garcia provided a plethora of illustrations of his intentional infliction of injuries to C.G. over the course of two months, explaining he would "lose it" when she cried and caused most of C.G.'s injuries by shaking her "real hard" but rarely hit C.G. with his fist. *Id.* The indictment alleged death by shaking and Mr. Garcia challenged the sufficiency of evidence to support his conviction, El Paso's Court of Appeals affirmed. *Id.* at 404. El Paso's Court of Appeals began its analysis with "Texas case law is replete with holdings that when an adult defendant has had sole access to a child at the time its injuries are sustained, the evidence is sufficient to support a conviction for injury to a child, or murder if the child dies" citing *Bryant*, *Elledge*, and *Butts*. *Id.* at 405. The court went on to reason that in regards to Mr. Garcia's case a rational trier of fact could conclude the cause of death, and Mr.

Garcia's culpability therein, since he admitted to being alone with C.G. when she sustained injuries and his related intentional actions. *Id.* at 406.

Like *Plunkett*, the defendant in *Crawford v. State* admitted to acts that would directly result in injuries as the child was found to sustain and evidence was upheld as sufficient. *Crawford v. State*, 2014 WL 5878112 (Tex. App.– Ft. Worth 2014). Austin Crawford was saying ten month old K.M. was blue as K.M.'s mother woke up the day her daughter was pronounced dead. *Id*. at 2. The jury heard from several witnesses that Mr. Crawford admitted to shaking K.M. and were played a recording taped while Mr. Crawford was in custody attesting to that effect. *Id.* at 2-3. A Detective further stated Mr. Crawford also admitted to throwing K.M. on the couch where Mr. Crawford later found K.M. not breathing. *Id.* at 3. K.M.'s treating physician characterized the injuries as non-accidental as they were consistent with someone violently shaking K.M. or striking her. *Id.* at 2. K.M.'s medical examiner found evidence of blunt head trauma concluding K.M. was struck or caused strike something. *Id.* at 3. Mr. Crawford contested the sufficiency of the evidence since he was not in exclusive possession of K.M. at the time her injuries were sustained. *Id*. Fort Worth's Court of Appeals affirmed conviction. *Id.* at 5. The court reasoned that necessary inferences are reasonable when based upon the cumulative force of the evidence and sole possession was simply a factor for incrimination, not a perquisite of culpability. *Id.* at 3-4.

**C. El Paso Court of Appeals holding in *Urias*.**

Like *Johnson*, here the evidence presented at trial amounts to only strong suspicion or mere probability that Javier Urias is culpable of serious injury to a child. *Urias v. State*, 2014 WL 1259397 (Tex. App.— El Paso 2014). Mr. Urias, while dating J.A.'s mother, was taking care of J.A. and called emergency services to report J.A. sustained injuries when J.A. fell off a bed. *Id*. at 1. J.A. had minor old bruises, but visibly, little more. *Id*. A computerized tomography scan revealed building cranial pressure from two separate hematomas. *Id*. One hematoma was sustained no more than seven-two hours prior, and the other one anywhere from three weeks to four months old. *Id*. J.A. immediately underwent surgery. *Id*. The only other caretakers of J.A. testified Mr. Urias treated J.A. appropriately. *Id*. There were no notable averse actions of Mr. Urias evidenced otherwise, with exception of Mr. Urias explaining he "tried to slap [J.A.] around a little bit to wake him up" when J.A. lost consciousness. *Id*. One of J.A.'s treating physicians testified that J.A.'s injuries could have been sustained at the time from falling off a bed due to the past hematoma. *Id*. at 2. The physician went on to say while referring to findings of another physician, who did not testify, that J.A.'s retinal bleeding suggested the injuries were intentionally caused and not accidentally. *Id*. El Paso's Court of Appeals affirmed conviction. *Id*. at 5. The court reasoned a jury could infer that J.A.'s injuries were sustained when in the sole possession of Mr.

Urias[4] (citing *Garcia*) and could also infer that that injury was intentionally caused and not a result of accident[5] or natural effect. *Id.* at 3.

***Stare Decisis* of *Johnson* is Applicable to *Urias*.**

The court of *Butts* focusing on dicta in *Johnson* found the evidentiary burden to be met by an expert witness' belief that J.A.'s injuries occurred as an intentional act perpetrated by an adult during the time J.A. was in Ms. Butts' exclusive care. *Butts*, 835 S.W.2d at 150. The court went on to state that it was the jury's prerogative to determine the cause of J.A.'s injury to be Ms. Butts. *Id.* at 151. In order to reach this conclusion the court of *Butts* cites *Plunkett. Id.* However, as detailed above this Court explained in *Plunkett* evidence supports affirming conviction when its cumulative effects sufficiently incriminate the defendant. This Court in *Johnson* specifically stated that its holding was contingent upon *Wright*: it is not within the prerogative of jurors to find guilt simply by negative disjunction. *Johnson v.* State, 673 S.W.2d at 197; *see Wright v. State*, 603 S.W.2d 838 (Tex. Crim. App. 1980). Moreover, in *Johnson* this Court held complicity is not demonstrated by mere presence and proof amounting to strong or mere

---

[4] To establish Mr. Urias was present the court found injuries occurred shortly before J.A. exhibited symptoms for three reasons: (1) children's larger brains hastens the onset of neurological symptoms, (2) prior injury reduced the space inside the cranium even further before the second bleed began, and (3) a shift in a child's brain from those injuries would cause total comatose towards the seventy-two-hour widow limit.

[5] The court noted that the lack of any discernable trauma on J.A.'s body combined with the presence of retinal bleeding indicated J.A.'s injuries stemmed from being shaken vigorously.

13

probability when there is no showing that the related act was committed intentionally and knowingly. *Id*.

Unlike *Butts*, the court of *Elledge* does not even mention *Johnson*. This is likely do the fact that Mr. Elledge did not appeal on the issue of sufficiency of evidence. In *Elledge* the assessment of the weight of the evidence was in regards to the effects new evidence would have upon a new trial. *Elledge v. State*, 890 S.W.2d at 847. There was not discussion of *Plunkett* or *Johnson* and the standards therein.

Whereas, *Bryant*, *Garcia*, and *Crawford* all satisfy the evidentiary standard in *Plunkett*, in that the cumulative effect of incriminating evidence points to an intentional action(s) on the part of the defendant that directly caused serious injuries or death to a child. Therefore, it is in meeting the standard in *Plunkett* that there was more than mere presence and evidence amounting to only strong suspicion or mere probability of culpability. *Crawford* was correct in that exclusive possession held in *Garcia* is simply factor for incriminating evidence, not a perquisite of culpability. *Crawford*, 2014 WL 5878112, 3.

Accordingly, El Paso's Court of Appeals below erred when it cited *Garcia* is determinative on this matter that evidence is sufficient for injury to a child conviction where it shows an adult defendant has had sole access to a child at the time the child sustained her injuries. This Court held in *Johnson* and *Plunkett* the

14

State must demonstrate more against Mr. Urias than has been shown, mere presence and resulting strong suspicion or mere probability of culpability is not sufficient to uphold Mr. Urias' conviction.

To establish Mr. Urias was present at the time of injuries, and the false inference of Mr. Urias' complicity, the court below denoted dispositive reasons as follows:

> (1) children's larger brains hastens the onset of neurological symptoms,
>
> (2) prior injury reduced the space inside the cranium even further before the second bleed began,
>
> (3) a shift in a child's brain from those injuries would cause total comatose towards the seventy-two-hour widow limit, and
>
> (4) the lack of any discernable trauma on J.A.'s body combined with the presence of retinal bleeding indicated J.A.'s injuries stemmed from being shaken vigorously.

*Urias v. State*, 2014 WL 1259397 at 3. None of the reasons supplied by the court supply proof beyond strong suspicion or mere probability that Mr. Urias may have or may not have been complicit in any related act resulting in the crime alleged. Furthermore, it is presumptive for the court to find causation for the jury when the Jury was presented three alternative means and did not specific which method alleged they found culpability upon.

During the time medical testimony said J.A. could have sustained his injuries, the record definitely shows J.A. had multiple care takers: Guadalupe

15

Salas, J.A.'s great aunt, watched J.A. the day before the onset of his symptoms (3 RR 56), Yolanda Salas, J.A.'s other great aunt also had access to J.A. that day ( RR 58), and J.A.'s mother, Roxanne Alvarado, also had access to J.A.. (3 RR 132). The proof required under *Plunkett* and *Johnson* is only further complicated by the fact that J.A. had a chronic or pre-existing subdural hematoma at the time he fell off of his bed that no evidence attributes to Mr. Urias. (3 RR 119) The record shows that even benign circumstances could have triggered a re-bleed. (3 RR 45-46) (CR 210) (SX 1) (SX 3) Moreover, there was no evidence from any source of anyone seeing Mr. Urias or someone else hitting J. A., striking J.A. against something, or shaking J.A.. These facts demonstrate that only mere probability or strong suspicion exists for Mr. Urias' culpability and severely undermine a finding that Mr. Urias' was even present at the time the injuries occurred.

## CONCLUSION

This Court has provided Texas' Courts of Appeals the standards to assess sufficiency of evidence in cases involving serious injury or death to children: in *Plunkett* this Court held cumulative incriminating evidence may support a conviction, and as per *Johnson* mere presence with only strong suspicion or mere probability of culpability is insufficient. Both holdings remain precedential law that the El Paso's Court of Appeals declines to follow when it holds that evidence is sufficient for injury to a child conviction where it shows, without more, an adult

16

defendant has had sole access to a child at the time the child sustained her injuries. *Urias v. State*, 2014 WL 1259397 at 3. Therefore, Mr. Urias is entitled to the relief of reversal of his conviction of injury to a child since the evidence did not prove *corpus delicit* of the crime alleged and thus is legally insufficient.

## PRAYER

Wherefore, appellant prays that this petition for discretionary review be granted, that this court review the opinion of the Eighth Court of Appeals, and requests all relief to which he may show himself justly entitled.


Respectfully Submitted,


JAIME GÁNDARA
*El Paso County Chief Public Defender*


**/s/ *William Robinson Cox***
William Robinson Cox
*First Assistant*
State Bar No. 00792933
500 E. San Antonio, Room 501
El Paso, Texas  79901
Tel. No. 915.546.8185
Fax 915.546.8186
wcox@epcounty.com

Benjamin Joseph Gutiérrez
*Solo Practitioner*
State Bar No. 24094693
Post Office Box 41
El Paso, Texas 79940
Tel. No. 915.239.0793
Fax No. 866.399.5268
bjgutierrez@miners.utep.edu


## CERTIFICATE OF SERVICE


Pursuant to Tex. R. App. P. 9.5(d), copies of the foregoing petition were served on opposing counsel, and the State Prosecuting Attorney, P.O. Box 12405, Capital Station, Austin, Texas 78711, by placing copies in the United States mail, postage prepaid, on July 15th, 2015.

**/s/ *William Robinson Cox***
William Robinson Cox

18

## CERTIFICATE OF COMPLIANCE

Undersigned counsel herein states that the computer generated word count is 3,611 and as such this document is in compliance with the Texas Rules of Appellate Procedure.

/s/ *William Robinson Cox*

William Robinson Cox

Benjamin Joseph Gutiérrez

# APPENDIX



|  | § |  |
| --- | --- | --- |
| JAVIER URIAS, | | No. 08-12-00090-CR |
| | § | |
| Appellant, | | Appeal from the |
| | § | |
| | | 243rd District Court |
| | § | |
| STATE OF TEXAS, | | of El Paso County, Texas |
| | § | |
| Appellee. | | (TC# 20090D03338) |

## **O P I N I O N**

Javier Urias appeals his conviction of injury to a child causing serious bodily injury. In two issues, Appellant challenges the legal sufficiency of the evidence and the admission of a medical doctor's expert testimony over his Daubert' and Confrontation Clause objections. We affirm.

### BACKGROUND

Prior to the incident in question in 2009, Appellant had been dating Roxanne Alvarado ("Roxanne"), mother of a four-year-old boy, a two-week-old boy, and fifteen-month-old Dominic Jacob Alvarado ("Jacob"), for about eight months. None of Roxanne's sons were Appellant's biological children. Appellant and Roxanne resided together in a studio apartment that was part of a three-apartment building. Roxanne's two aunts resided in the other units.

_____

'*Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 *(1993).*

Roxanne's youngest son was born premature, so Roxanne went to the hospital twice a day following his birth to feed him and learn appropriate care methods. Appellant usually accompanied Roxanne to the hospital during these visits. During this time, Roxanne, Appellant, and Roxanne's two aunts were the only people who took care of Roxanne's sons. Roxanne testified that she trusted Appellant with her children, and Roxanne' s aunt Guadalupe S alas testified that Appellant usually treated Roxanne's children appropriately. On Mach 25, 2009, Roxanne left Appellant in charge of Jacob while she went to the hospital. Salas had watched Jacob the prior day. Salas testified that Jacob had been in good health that day, and neither she nor her sister Yolanda had hit Jacob or caused him any injury. Roxanne also denied hitting Jacob and denied any knowledge of any prior head injuries. Appellant did not testify in his own defense. His account as relayed through a 911 call recording and his statements to police indicates that Appellant claimed he had placed Jacob on a bed while changing his diaper. While Appellant left the room to get supplies, he heard Jacob screaming, and when he returned, the baby was on the floor. When Appellant picked him up, Jacob was clenching his jaw and breathing irregularly. At some point, Jacob lost consciousness, and Appellant "tried to slap him around a little bit to wake him up." Appellant called 911.

When paramedics arrived, Jacob was breathing but unconscious and unresponsive. Appellant told them that Jacob had fallen off the bed and that he had cried before becoming unconscious. One paramedic testified that Jacob had no apparent physical injuries beyond a bruise on his forehead and a small cut on his chin, both of which were "old." Paramedics subsequently took Jacob by ambulance to R.E. Thomason General Hospital, now known as University Medical Center ("UMC"), in El Paso.

Jacob arrived at the hospital semi-conscious and nearly in a coma. A team of medical

personnel led by Dr. Alan Tyroch treated Jacob at UMC. The hospital admitted Jacob as a Level I trauma patient. An X-ray bone scan showed that Jacob had no visible bone fractures. A CT scan of Jacob's head indicated the presence of blood from two separate subdural hematomas, one chronic - i.e., between three weeks and four months old - and one acute, taking place within 72 hours of the scan. Dr. Fadi Hanbali, a neurosurgeon on Jacob's treatment team, testified that subdural hematomas occur when blood vessels in the skull rupture as a result of trauma and blood begins to accumulate between the brain and the dura, a hard membrane encasing the brain inside the cranium. In Jacob's case, the subdural hematoma had caused a 9-millimeter midline shift of the brain, meaning that accumulating blood had forced Jacob's brain to one side of the skull. Dr. Hanbali characterized the 9-mm midline shift as a serious medical emergency that could result in death. He testified that he performed surgery to stem the bleeding and evacuate blood from inside the dura, thereby relieving pressure on the brain.

Following surgery, Dr. Tyroch asked Dr. Neil Adams, an ophthalmologist, to perform an eye exam on Jacob. Dr. Adams, who did not testify at trial, noted the presence of retinal bleeding in Jacob's medical file. Both Dr. Hanbali and Dr. Tyroch testified that retinal hemorrhaging was not consistent with a fall from the bed and suggested instead that Jacob had been shaken fairly vigorously. Dr. Tyroch further testified that although it was possible that the previous subdural hematoma made Jacob more susceptible to getting the acute hematoma from a short fall from the bed, the presence of retinal bleeding and absence of recent visible trauma suggested that the injury stemmed from a caretaker's intentional shaking of the child and not an accidental fall.

The jury returned a guilty verdict against Appellant. He was sentenced to forty-five years' in prison.

# I.

In Issue One, Appellant contends that the evidence is legally insufficient to support a jury finding that he caused Jacob's serious injuries. We disagree.2

## *Standard of Review*

In assessing the legal sufficiency of a verdict, we review all the evidence in the record, both "properly and improperly admitted[,]" in "the light most favorable to the prosecution" to determine whether "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Clayton v. State*, 235 S.W.3d 772, 778 (Tex.Crim.App. 2007), *citing Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979)[Emphasis omitted]. "Circumstantial evidence is as probative as direct evidence in establishing the guilt of an actor, and circumstantial evidence alone can be sufficient to establish guilt." Id., *citing Hooper v. State*, 214 S.W.3d 9, 13 (Tex.Crim.App. 2007). Our role on legal sufficiency review is not to usurp the jury and replace its verdict with our own; instead, we serve as a procedural safeguard, ensuring that whatever verdict the jury rendered comports with due process. *King v. State*, 29 S.W.3d 556, 562 (Tex.Crim.App. 2000); *Johnson v. State*, 967 S.W.2d 410, 412 (Tex.Crim.App. 1998). "In conducting this review, we must defer to the jury's role as the sole judge of the credibility and weight that testimony is to be afforded." *Castaneda v. State*, 08-10-00050-CR, 2011 WL 4490960, at *4 (Tex.App.--E1 Paso Sept. 28, 2011, pet, ref'd)(not designated for publication).

## *Analysis*

Appellant complains that the State, at best, merely presented the jury with conflicting, equally plausible guilt and innocence scenarios that cannot establish proof of guilt beyond a

_____

2 As a threshold matter, the State objects to Appellant's briefing of Issue One, arguing that it is deficient under TEx.R.APP.P. 38.1 and thus presents nothing for our review. We overrule the State's objection and find that Issue One of Appellant's brief complies with the Rules of Appellate Procedure.

reasonable doubt as a matter of law. See Clark v. Procunier, 755 F.2d 394, 396 (5th Cir. 1985)(where evidence gives near-equal weight to theories of guilt and innocence, reasonable doubt precluding a guilty verdict exists and a defendant is entitled to acquittal). However, the "introduction of conflicting evidence does not render evidence insufficient." Castaneda, 2011 WL 4490960, at N. The Court of Criminal Appeals has instructed the courts of appeals to presume that "[w]hen the record supports conflicting inferences . . . the factfinder resolved the conflicts in favor of the prosecution[.]" Clayton, 235 S.W.3d at 778. The ultimate question we answer in Issue One is whether any rational trier of fact could find that the State has proved every element of an offense beyond a reasonable doubt. Clayton, 235 S.W.3d at 778. Here, we find the State met its burden.

Appellant complains specifically that the State failed to provide evidence that Jacob's injuries were non-accidental, or that the injuries occurred while Appellant had sole care, custody, and control of Jacob, which would give rise to a permissible inference that he caused the injury. See Castaneda, 2011 WL 4490960, at *5 (evidence is sufficient for injury to a child conviction where it shows "an adult defendant has had sole access to a child at the time the child sustained her injuries . . . ."); Garcia v. State, 16 S.W.3d 401, 405 (Tex.App.--El Paso 2000, pet. ref d)(listing cases holding same).

The medical testimony is dispositive on these issues. The medical experts testified that although the CT scan could only establish that the blood began pooling between the brain and the dura at some point within seventy-two hours of the scan, the bleeding likely began shortly before Jacob exhibited symptoms, given that (1) a child's brain is larger in relation to the skull than an adult's brain, which hastens the onset of a subdural hematoma's neurological symptoms in children; (2) the presence of old blood from the second, undetected subdural hematoma would

have reduced the space inside the cranium even further before the second bleed began; and (3) Jacob arrived at the hospital semi-conscious in spite of his brain having shifted nine millimeters off-center, whereas a subdural hematoma that serious in a child that age likely would have rendered him totally comatose as he approached the seventy-two-hour window limit. Dr. Tyroch further testified that while the first healed-over subdural hematoma could have made Jacob more susceptible to a bleed from accidentally falling off the bed, the lack of any discernable trauma on Jacob's body combined with the presence of retinal bleeding indicated to him that Jacob's injuries stemmed from being shaken vigorously.

Based on this testimony, a rational juror could infer that Jacob sustained a subdural hematoma at the time he was in Appellant's sole care, custody, and control. A rational juror could also infer based on the presence of retinal hemorrhaging that the injury was caused by vigorous shaking and not by accident, some prior injury, or a congenital defect. Taking those two factors together, a rational juror could find guilt beyond a reasonable doubt on the charge levied in the indictment. The evidence is legally sufficient.

Issue One is overruled.

## II.

In Issue Two, Appellant maintains that the trial court erred by admitting, over his objections on Daubert and Confrontation Clause grounds, portions of Dr. Tyroch's testimony. Specifically, Appellant complains that Dr. Tyroch's testimony about Jacob's retinal hemorrhaging stemmed from the medical report of Dr. Adams, the ophthalmologist with whom Dr. Tyroch consulted during treatment who did not testify at trial. Because Appellant could not cross-examine Dr. Adams regarding his medical findings, Appellant contends his confrontation rights were violated under Bullicoming v. New Mexico, - U.S. -, 131 S.Ct. 2705, 180 L.Ed.2d

610 (2011). The State raises a bevy of briefing and preservation of error issues before arguing alternatively that Dr. Adams' medical report was not "testimonial" under the Sixth Amendment. We address each issue in turn.

### *Inadequate Briefing on Daubert Issue*

In its response, the State contends that Appellant failed to adequately brief the *Daubert* issue. We agree. Although the Court is mindful of its duty to liberally construct briefs in assessing compliance with the Rules of Appellate Procedure, see TEx.R.APP.P. 38.9; *White v. State*, 50 S.W.3d 31, 45 (Tex.App.--Waco 2001, pet. ref d), Appellant has failed to comply with TEx.R.APP.P. 38.1(i). His argument section sets out the standard of review for *Daubert* challenges before Appellant states that "[b]ased on the totality of the evidence it is appellant's position that State [sic] failed to establish the etiology of the injury and therefore to prove its causal link to the defendant." Even under the most liberal construction of his brief, Appellant failed to challenge Dr. Tyroch's credential or methodology, nor did he apply the law to any facts beyond this conclusory assertion. As such, we find that nothing has been presented for appellate review on this issue.

The *Daubert* sub-point of Issue Two is overruled on inadequate briefing grounds.

### *Preservation of Error*

The State further argues that Appellant failed to preserve error on the admission of Dr. Adams' retinal bleeding diagnosis because he failed to timely object to testimony and because his argument on appeal fails to comport with the objection made at trial. We agree that Appellant failed to preserve error.

"To be timely, a request, objection, or motion must be made at the earliest opportunity." *Casey v. State*, 349 S.W.3d 825, 834 (Tex.App.--El Paso 2011, pet. ref d). "An objection must

be made each time inadmissible evidence is offered unless the complaining party obtains a running objection or obtains a ruling on his complaint in a hearing outside the presence of the jury." *Garza v. State*, No. 08-11-00035-CR, 2012 WL 1883118, at \*2 (Tex.App.--El Paso May 23, 2012, pet. rerd)(not designated for publication). Further, an objection does not preserve error unless the trial court rules on the objection or the complaining party objects to the trial court's refusal to rule. TEx.R.APP.P. 33.1(a)(2).

Here, Appellant failed to preserve error for two reasons. First, Appellant failed to obtain a ruling on the confrontation objection. Instead, the record shows that Appellant lodged an objection arguably on confrontation grounds, among other grounds, before the court allowed him to take Dr. Tyroch on voir dire at a *Daubert* hearing. Following that hearing, Appellant objected to Dr. Tyroch's testimony on the basis that it was cumulative. The trial court overruled the objection and noted that it found Dr. Tyroch to be qualified to testify as an expert. Appellant then requested miming objections on the issues of relevance, cumulative presentation of evidence, improper bolstering, "asked and answered," and on Dr. Tyroch's qualifications. The trial court granted running objections only on the issues of relevance and cumulative presentation. The record does not indicate that the trial court ever ruled on the confrontation grounds Appellant advanced in his pre-*Daubert* hearing objection. As such, no error is preserved.

Second, Appellant waived his objection on the basis of timeliness. Appellant's counsel failed to object to the discussion of retinal bleeding during Dr. Hanbali's testimony prior to Dr. Tyroch relaying the same information to the jury. Appellant's counsel claims he refrained from objection during Dr. Hanbali's testimony because Dr. Adams was designated as a possible witness on the State's witness list for trial, and it was his understanding that Dr. Adams would

testify. When counsel realized that Dr. Adams would not testify, he maintains he objected, informed the trial court of the situation, and requested a limiting instruction from the court. However, this is not enough to preserve error on confrontation grounds. Counsel should have objected at the first mention of the retinal bleeding if he wished to preserve the issue for appeal. *Casey*, 349 S.W.3d at 843.

Finally, even if error was properly preserved, the Sixth Amendment prohibits the introduction only of *testimonial* statements from unavailable declarants not previously subjected to cross-examination. *Crawford v. Washington*, 541 U.S. 36, 59, 124 S.Ct. 1354, 1369, 158 L.Ed.2d 177 (2004). Dr. Adams statements were not "testimonial" for *Crawford* purposes, given that they were made for the primary purpose of rendering medical treatment and obtaining a differential diagnosis between accidental injury and intentional trauma. See *Melendez-Diaz v. Massachusetts*, 557 U.S. 305, 312 n.2, 129 S.Ct. 2527, 2533 n.2, 174 L.Ed.2d 314 (2009); *Berkley v. State*, 298 S.W.3d 712, 715 (Tex.App.--San Antonio 2009, pet. ref'd)(admission of unavailable sexual assault nurse examiner's report through a surrogate did not violate *Crawford* because report compiled for non-testimonial medical treatment purposes); *Perez v. State*, No. 1411-01102-CR, 2013 WL 655714, at *7..*8 (Tex.App.--Houston [14th Dist.] Feb. 21, 2013, no pet.)(mem. op., not designated for publication)(absent direct evidence of physician's purpose in questioning patient, trial court does not abuse its discretion in ruling physician's report is non-testimonial and made for medical purposes).

Issue Two is overruled. We affirm Appellant's conviction.

March 26, 2014

YVONNE T. RODRIGUEZ, Justice

Before McClure, C.J., Rivera, and Rodriguez, JJ.

(Do Not Publish)

- 9 -